NORTH MISSOURI RAILROAD COMPANY AND MORRIS K. JESUP, Respondent, *v.* CONSTANTINE MAGUIRE, Appellant.

1. *Revenue — North Missouri R. R. — Ordinance of 1865 constitutional.*—The convention ordinance of 1865, providing that an annual tax of ten and fifteen per cent. of the gross earnings of the North Missouri Railroad Company should be paid to the State in lieu of other taxation, and applied in payment of the debt due from the State on the bonds issued by the State to that company, is not repugnant to the constitution of the United States in any of the following particulars:

1. It does not violate articles v and vII of the amendments of the United States constitution. Those articles were not designed as limitations upon State governments in respect to their own citizens, but exclusively as restrictions upon Federal power.

2. The act of February 16, 1865, providing that the mortgage of the State on the North Missouri Railroad, taken to secure the amount guaranteed by the State to aid in the completion of the road, should be released and made a second lien, was a contract with the State. But the ordinance of 1865, referred to, did not impair the obligation of that contract between the railroad and the State. There is nothing in that act to prevent the State from exercising the sovereign right of taxation. The act does not pretend to grant exemption from taxation in express terms, and the courts will never presume that the State intends such exemption. Obviously the matter of taxation did not enter in the act, but was left where it was found before.

3. The ordinance is not unconstitutional by virtue of the clause imposing uniform taxation on all property. The ordinance itself is a part of the constitution, and cannot be nullified by the more general provision relating to the subject of taxation.

North Mo. R.R. Co. et al. v. Maguire.

5. The ordinance of 1865 is not unconstitutional on the ground that the assessment is not in the nature of a tax. Although not levied and obtained directly for purposes of revenue, the assessment is a tax. It was raised for the purpose of paying the State's indebtedness. When money is once raised by taxation it is revenue, without regard to the purpose to which it is appropriated or applied.

2. *Revenue — Taxation, unequal — Legislation.* — The right of determining what proportion of the burdens of taxation shall be borne by any individual or class of individuals must be determined by the Legislature, when there is no constitutional restriction. And the remedy, in case of unjust legislation, is to be found among the constituents of the legislators, and not in the judiciary.

## *Appeal from St. Charles Circuit Court.*

*R. E. Rombauer*, for appellant.

The ordinance "for the payment of the State and Railroad indebtedness," adopted by the people of the State of Missouri in convention, April 8, 1865, is not in contravention of any provision of the constitution of the United States. It is not in violation of the fifth article of the amendments to the constitution, because the restrictions imposed on legislation by that article are applicable to the government created by that instrument only, and are not applicable to the States. (Barron v. The Mayor, etc., of Baltimore, 7 Pet. 243 ; Withers v. Buckley, 20 How. 84, 91.) That ordinance is not in violation of the tenth section of the first article of the constitution of the United States, impairing the obligation of no contract.

At the date of the passage of the act of February 15, 1865, the North Missouri Railroad Company possessed no charter exemption from taxation. That act did not pretend to grant any exemption from taxation in expressed terms, and such exemption can never be presumed. (Providence Bank v. Billings, 4 Pet. 561, 562 ; Gordon v. Appeal Tax Court, 3 How. 133 ; Christ Church v. Philadelphia, 24 How. 300 ; Jefferson Branch Bank v. Kelly, 1 Black, 447 ; Philadelphia & Wilmington R.R. v. Maryland, 10 How. 376 ; Washington University v. Rowse, 42 Mo. 321.)

Even the Legislature may repeal a temporary rate of taxation, and impose another and higher rate, or additional taxes, by virtue of the State sovereignty over the whole subject of taxation,

unless there has been some express contract in limitation of the power. (St. Joseph v. Hann. & St. Jo. R.R. Co., 39 Mo. 496; Ohio Life Ins. & Trust Co. v. DeBolt, 16 How. 416, 435, 436; Easton Bank v. The Commonwealth, 10 Barr, 442, 450.) How much more so may the sovereign people of a State in convention assembled do so, on whom in the very nature of things there can be no constitutional restraint, except such as is found in the constitution of the United States.

All contracts are made subject to the sovereign power of taxation vested in the people, which, like sovereign power of every description, is trusted to the discretion of those who use it. (McCulloch v. Maryland, 4 Wheat. 429, 430; Herrick v. Randolph, 13 Verm. 529; Town of Guilford v. Cornell et al., 18 Barb. 615; 3 Kern. 143; Sharpless v. The Mayor of Philadelphia, 9 Harris, 147; McSpeddon v. Baker, 34 Barb. 69; Attorney-General v. Winnebago R.R. Co., 11 Wis. 42, 45; Hamilton & Treat v. The St. Louis County Court, 15 Mo. 22, 23; Mager v. Grima, 8 How. 490; The People v. Lawrence et al., 36 How. 177; Sill v. The Village of Corning, 15 N. Y. 303; The People v. Draper, 15 N. Y. 549; Langhorn & Scott v. Robinson, 20 Gratt. 661.)

When unrestricted by the constitution of the United States, the power of the people of the States is like the transcendent power of the British parliament. (Wilkinson v. Leland, 2 Pet. 657–8; Bonaparte v. The Camden & Amboy R.R., 1 Bald. 220; Farmers' & Mechanics' Bank v. Smith, 3 Serg. & R. 68; Calder v. Bull, 3 Dall. 386; Bank v. Commissioners, 2 Black, 620; District of the City of Pittsburg, 2 Watts, 323.) It is a fallacy to suppose that because the act of 1865 provides for a distribution of the earnings of the road in a certain order, that therefore the convention ordinance providing for a tax on the gross earnings interfered with that distribution. All taxes imposed on the road were necessarily part of the "actual and current expenditures of the railroad," which by the terms of the act of February 15, 1865, were to be paid first, and prior to all other things.

A tax on gross earnings is but a usual and well-known mode of taxation. (Laws of U. S. 1863–4, pp. 285–6; 2 Redf.

Railw., § 228 ; Southern Ex. Co. v. Hood, 15 Rich. 66 ; State v. Hood, *id.* 177.)

The parties complaining in this court of a violation of the contract are not the bondholders, but the corporation — a party which, by the very terms of the act of 1865, is the last distributee in the order of the distribution of the funds, and whose rights are not interfered with in any view of the case.

*Orrick & Emmons*, for respondent.

I.  The ordinance of the State convention of the 8th day of April, 1865, in providing another and different mode of enforcing the payment of the indebtedness of respondent to the State than that provided by the act of February 16, 1865, is unconstitutional and void :

1.  Because it impairs the obligation of the contract entered into between the State and respondent by the act of February 16, 1865, without the consent of the respondent, which declared that " this act shall be and become of full force and binding effect upon said corporation and the State of Missouri." (Dartmouth College v. Woodward, 4 Wheat. 519 ; Trustees Vincennes University v. Indiana, 14 How. 268 ; Planters' Bank v. Sharp, 6 How. 301 ; Piqua Bank v. Knoop, 16 How. 369 ; Binghampton Bridge case, 3 Wall. 51 ; Norris v. Trustees of Abingdon Academy, 7 Gill & J. 7; Grammar School v. Burt, 11 Verm. 632 ; Brown v. Hummel, 6 Penn. St. 86 ; State v. Heyward, 3 Rich. 389 ; The People v. Manhattan Co., 9 Wend. 351.)

2.  Because the action of the convention in adopting the ordiance was an assumption of judicial authority by a body purely legislative, in which it determined the rights of the State and the liabilities of the corporation ; named and decreed the manner and extent of the payments to be made.   (Newland v. Marsh, 19 Ill. 82 ; Ervine's Appeal, 16 Penn. St. 266 ; Greenough v. Greenough, 11 Penn. St. 494 ; Dechastellux v. Fairchild, 15 Penn. St. 18.)

3.  Because the ordinance assumes that at the time of its passage there was due from the North Missouri Railroad Company to the State principal and interest upon certain bonds, the payment of

which was guaranteed by the State, without giving the respondent an opportunity to dispute the fact of indebtedness and have the issue tried by a jury. (Bank of Missouri v. Anderson, 1 Mo. 244.)

4. Because the ten per cent. assessment upon the gross earnings of the North Missouri Railroad Company was not levied for the purposes of revenue, but to pay a debt which the said company owed the State by reason of the advances the State had made in the payment of guaranteed bonds or the coupons attached, and to provide for future payments which the State might be called upon to make when the remaining bonds and coupons matured. (City of Carondelet v. Picot, 38 Mo. 130 ; Glasgow v. Rowse, 43 Mo. 489 ; 41 Ill. 306 ; 48 Ill. 172 ; 15 B. Monr. 498 ; 12 Allen, 504 ; 16 Mich. 269.)

5. Because, if it cannot be sustained as a tax, the ordinance seeks to deprive the respondent of their property without due process of law by a legislative judgment. (2 Yeager, 269–70 ; 10 Yeager, 59 ; 3 Scam. 238.)

II. The levy upon and seizure of respondent's property by appellant as collector of St. Louis county, is not authorized by the terms of the ordinance, as section 4 specifically declares that, should the bonds or any part thereof remain due and unpaid, the general assembly shall provide by law for the sale of the railroad and other property, and the franchises of the company that shall thus be in default, and shall appropriate the proceeds of such sale to the payment of the amount remaining due and unpaid from said company.

WAGNER, Judge, delivered the opinion of the court.

This case comes here for review on appeal from the St. Charles Circuit Court, before which the parties voluntarily appeared, submitting the matters in controversy between them on an agreed statement of facts. The court entered judgment for plaintiffs, and it is to reverse that judgment that this appeal is prosecuted.

Whilst some minor and incidental matters have been discussed, the real questions presented by the record all resolve themselves into one, namely, the validity of the convention ordinance of

April, 1865, relating to railroad indebtedness. The first section of the ordinance — and this is all that is material to be here noticed — provides that " there shall be levied and collected from the Pacific Railroad, the North Missouri Railroad, and the St. Louis & Iron Mountain Railroad companies, an annual tax of ten per centum of all their gross receipts for the transportation of freight and passengers (not including amounts received from and taxes paid to the United States) from the first of October, 1866, to the first of October, 1868, and fifteen per centum thereafter; which tax shall be assessed and collected in the county of St. Louis, in the same manner as other State taxes are assessed and collected, and shall be appropriated by the general assembly to the payment of the principal and interest now due, or hereafter to become due, upon the bonds of the State, and the bonds guaranteed by the State, issued to the aforesaid railroad companies."

The tax specified in the ordinance was to be collected from each company only for the payment of the principal and interest on the bonds, for the payment of which each company was liable; and whenever such bonds and interest were fully paid, then no further tax was to be collected from the company.

The objections urged against the ordinance, and contained in the agreed case, are that it is unconstitutional; that it violates the fifth and seventh amendments to the constitution of the United States, and that it is also opposed to that provision which declares that no State shall pass any law impairing the obligation of a contract.

The position assumed, that the ordinance is invalid because it is repugnant to the amendments designated, cannot be maintained. By a series of adjudications in the national courts it has been definitely settled that these amendments are limitations of power on the general government, and have no application to the States.

In the case of Barron v. City of Baltimore, 7 Pet. 243, the whole question was fully considered and ably examined upon a writ of error to the Court of Appeals of the State of Maryland. The error alleged was that the State court sustained the action of the defendant under an act of the State Legislature, whereby the

property of the plaintiff was taken for public use in violation of the fifth amendment. The court held that its appellate jurisdiction did not extend to the case presented by the writ of error, and Chief Justice Marshall, declaring the unanimous judgment of the court, said : "The question presented is, we think, of great importance, but not of much difficulty.    *    *    *
The constitution was ordained and established by the people of the United States for themselves, for their own government, and not for the government of the individual States.   Each State established a constitution for itself, and in that constitution provided such limitations and restrictions on the powers of its particular government as its judgment dictated.   The people of the United States framed such a government for the United States as they supposed best adapted to their situation and best calculated to promote their interests.   The powers they conferred on this government were to be exercised by itself, and the limitations on power, if expressed in general terms, are naturally, and we think necessarily, applicable to the government created by the instrument.   They are limitations of power granted in the instrument itself, not of distinct governments framed by different persons and for different purposes."   And, in conclusion, after a thorough examination of the several amendments which had then (1833) been adopted, he observes : "These amendments contain no expression indicating an intention to apply them to State governments.   This court cannot so apply them."

That the amendments "were not designed as limits upon the State governments in reference to their own citizens," but "exclusively as restrictions upon Federal power," was declared in Fox v. Ohio, 5 How. 434, to be "the only rational and intelligible interpretation which these amendments can have."   And language equally decisive may be found in Smith v. State of Maryland, 18 How. 76, and Waters v. Buckley *et al.*, 20 How. 90.   The same doctrine is confirmed in the recent case of Twichell v. The Commonwealth, 7 Wall. 321, where it is said, "the scope and application of those amendments are no longer subjects of discussion."

But the main question is whether the ordinance violates or

impairs any contract entered into between the State and the company antecedent to its adoption. It is conceded that there was no law prohibiting the State from taxing the company, provided the right was not waived by the enactment which will now be referred to.

The plaintiff here, the North Missouri Railroad Company, made default in the payment of the interest on the bonds guaranteed by the State, and by the provisions of an act of the Legislature, approved February 16, 1865, entitled "An act to provide for the completion of the North Missouri Railroad and its West Branch, and for the construction of a bridge over the Missouri river," the mortgage or first lien of the State was released for $4,350,000 (the amount which the State had guaranteed for the company) and made a second lien, in order that $6,000,000 of the first mortgage bonds might be placed upon the road to complete it and build the bridge. The act also provided for the appointment by the governor of a fund commissioner for the company to receive all moneys belonging to the company, and to disburse the same as follows:

1. To said corporation the amounts required from day to day for the actual current expenditure in operating said railroad and carrying on the ordinary business of said corporation.

2. The amount of his salary as such fund commissioner in monthly installments.

3. The interest upon said first mortgage as the same should fall due.

4. The cost of construction and equipment of the said railroad.

5. The accruing dividends on preferred stock, not exceeding six per cent. per annum thereon, in accordance with the provisions of the act in relation thereto.

6. The interest due on the outstanding bonds of the State of Missouri, previously loaned to the company.

7. The payment of the principal of the first mortgage bonds, or, if none should have become due, then the payment of the principal of the bonds of the State; and,

Lastly. The balance to be paid to the corporation.

The ordinance was adopted by the people in June, 1865, after
32—VOL. XLIX.

the passage of the legislative enactment, and after its acceptance by the company. It is now claimed by the plaintiff that the act of February, 1865, was a contract between the State of Missouri and the North Missouri Railroad Company, and that the ordinance levying a tax on the gross receipts of the railroad company was in direct violation of the contract, because the State's lien was postponed to the lien of the first mortgage authorized by that act, and it was expressly provided that the interest on the first mortgage bonds so created be paid to the fund commissioner, out of the earnings of the road, in the third class of disbursements, and the interest on the lien of the State in the sixth class of disbursements ; that the ordinance requiring a tax of ten per cent: on the gross earnings to be paid to the State was in violation of the distribution of the earnings provided for by law, and an attempt on the part of the State to make itself a distributee in the first class.

It is readily admitted that the law of 1865 was a contract, and within the protection of the constitution of the United States, and that the State, after the acceptance of that law by the corporation, could not by an act, except the extinguishment of the mortgage thereby authorized, resume the position of first mortgagee. But is there anything in the act to prevent the State from exercising the sovereign power of taxation ? The act does not pretend to grant exemption from taxation in express terms, and the courts will never presume or infer that the State intends to abandon or surrender the important right of taxation. Whatever restrictions may have been imposed by the adjudications of the national tribunals on the sovereign rights of the States to exercise this vital power of taxation untrammeled, in cases where the State had parted with the right for a valuable consideration, yet all the courts proclaim that the abandonment of the right can never be presumed ; that the intention to abandon must appear in the most clear and unequivocal terms. Nor can there be any doubt of the power of the State, by reason of its sovereignty over the whole subject of taxation, to impose taxes on property previously exempt, or to raise the rates, unless there has been some express contract in limitation of the power upon a consideration deemed

to be a part of the value of the grant or the charter. (Providence Bank v. Billings, 4 Pet. 562; .Gordon v. Appeal Tax Court, 3 How. 133; Christ Church v. Philadelphia, 24 How. 300; Philadelphia & Wilmington R.R. v. Maryland, 10 How. 376; Jefferson Branch Bank v. Kelley, 1 Black, 447; Ohio Life Ins. & Trust Co. v. De Bolt, 16 How. 416; Washington University v. Rowse, 42 Mo. 325; St. Joseph v. Hann. & St. Jo. R.R., 39 Mo. 476; Lionberger v. Rowse, 43 Mo. 67; City of St. Louis v. Boatmen's Ins. & Trust Co., 47 Mo. 150; Pacific R.R. v. Dulle et al., 48 Mo. 282.) In the case of The City of St. Louis v. Boatmen's Ins. & Trust Co., *supra*, there was a clause in the charter which withdrew it from the operation of the general law relating to corporations, contained in the Revised Code of 1855, and it was thence contended that the corporation would not be liable to be taxed. But we decided that that provision simply guaranteed the charter against alteration and repeal, and in nowise granted an immunity from taxation. The act of incorporation was silent on the subject of taxation; and where that was the case, unless there was some contract to be impaired where there was a consideration given, it would never be presumed that the Legislature had divested itself of the high attribute of sovereignty, the power to tax. The surrender of such an important prerogative was not to be deduced by implication.

In the present case I have failed to find anything whatever to show that the rate or manner of taxation of the corporation, its franchises or property, formed any part of the contract contained in the act of 1865. Nothing is said about taxation, and it does not seem to have entered into the contract between the parties, but was obviously left where the law had placed it before. No specific provision was made for the fund commissioner's paying the taxes, but he was authorized in the first class of disbursements to pay the current expenditures for carrying on the ordinary business of the corporation, and the payment of taxes would certainly fall within this class.

It is also argued that the tax is unequal, and is therefore opposed to the clause in the constitution which enjoins a uniform rule as to the imposition of taxes on all property. But it

must be observed that the ordinance we are considering is a part of the constitution itself, expressly made so by its provisions on its adoption by the people. It is therefore a part of the fundamental law of the land. Of course, it must stand as well as any other part of the constitution, and cannot be nullified by the more general provisions of the same instrument concering the powers of the Legislature in reference to the general subject of taxation.

We have thus far assumed that the assessment provided for in the ordinance came within the scope and character of taxation. But the point is taken and advanced by the plaintiff that it is not a tax, that it amounts to a sequestration of property for the purpose of paying a debt, and has none of the criteria or elements of a tax. The question then arises, is the burden thus imposed by the people on these corporations a tax within the proper meaning of that term, as legally defined? "Taxation," says Chief Justice Marshall, "is said to be an absolute power which acknowledges no other limits than those expressly prescribed in the constitution, and, like sovereign power of every description, is trusted to the discretion of those who use it." (McCulloch v. Maryland, 4 Wheat. 429.) In the case of Glasgow v. Rowse, 43 Mo. 489, it was said, "taxes are burdens or charges imposed by the legislative power upon persons or property, to raise money for public purposes or to defray the necessary expenses in administering the government." A tax differs materially and essentially from a debt. The one is founded on contract; the other is not. A law which specifically appropriated the property of the citizen, and took it from one person and transferred it to another, would not be an exercise of the taxing power, no matter by what name it was called. To settle and fix the exact line of demarcation is a matter of great and perplexing difficulty; but mere oppressiveness in tax laws is no ground for setting them aside or arresting their operation. (Glasgow v. Rowse, *supra*.)

The power of the sovereign authority to tax is unlimited, and is a power to destroy. The only restraint is in the responsibility of those in whom the power is intrusted. Thus, in The People *ex rel.* Griffin v. The Mayor of New York, 4 Comst. 419, 423, it was held that the two clauses of the constitution which declare

that no person shall be deprived of his property without due process of law, and that private property shall not be taken for public use without just compensation, have no application to the taxing power. It was also decided in that case that the power to tax implies a power to apportion the tax as the Legislature shall see fit, and that the power of apportionment has no limit where there is no constitutional restriction.

These views are affirmed in the case of Brewster *et al.* v. The City of Syracuse, 19 N. Y. 116, and also in the case of The Town of Guilford v. Board of Supervisors of Chenango County, 3 Kern. 143. It was held in the former of these cases that the Legislature had the power to authorize the levy of a tax for the purpose of paying to one who had constructed a municipal improvement an addition to the contract price, which the corporation by its charter was forbidden to pay. The case of The Town of Guilford v. The Supervisors of Chenango County holds that the Legislature have the power to levy a tax upon the taxable property of the town to meet a claim made against the town, although there is no legal obligation on the part of the town to pay such claim ; and in a suit against the town it had been legally determined that the town was not liable to pay such claim. In the case of Thomas v. Leland *et al.*, 24 Wend. 65, it was held that an act of the Legislature imposing a tax upon a local district of the State in reference to a public improvement, is valid, notwithstanding that previous to the passage of the act a number of individuals of such district had entered into a bond to the State, by which they bound themselves to pay the whole expense of the improvement. These principles were reaffirmed in the case of Litchfield v. Vernon, 41 N. Y.143, and in the case of The People *ex rel.* Crowell v. Lawrence *et al.*, *id.* 137.

The settled principles to be deduced from these cases are that the sovereign power of taxation is lodged in the Legislature; that the power of taxing and the power of appropriating taxation are identical and inseparable ; that there is no constitutional restraint upon the exercise of its power; that the right of determining what portion of the public burdens, by way of taxation, shall be borne by any individual or class of individuals, must be determ-

ined by the Legislature; that, however much this power may be abused by the Legislature, the only check upon it is the responsibility of the legislative body to its constituents. Redress against unjust taxation must be sought in the same way, and no other, as redress against unjust and oppressive legislation in the general enactment of laws is sought.

The judicial department of the government furnishes no redress in such cases. There is no power in the judiciary to remedy injustice and oppression in a legislative act, except where in the attempted injustice or oppression some constitutional provision is violated. It was so decided by this court in Hamilton & Treat v. St. Louis County Court, 15 Mo. 3, where Gamble, J., said: "It is a principle, in construing the constitution, that the mere fact that a law is unjust in its operation, or even in the principles upon which it was adopted, does not authorize any expansion of the prohibitions in the constitution beyond their natural and original meaning, in order to remedy the evil in the particular case." This is the admitted construction in cases of legislative enactments, and when it comes to passing upon the organic law, the courts have no power to construe away its natural meaning, or grant relief on the supposed ground that it is founded on a wrong principle or commits an injustice. The New York cases are adjudications upon tax laws where the Legislature was not restricted in its action over the subject by any constitutional limitations. But here the tax is levied by the constitution itself, where in the very nature of things there would be no limitation or restriction over the body making the law and ordering the levy. There is nothing objectionable that we can see in taxing the gross receipts of the corporation. They are an usual and ordinary subject of taxation, and they were selected as a species of property in this instance by the sovereign power, and we have no right to say that the selection was wrong.

It is further argued that the money raised is not raised as a tax, because it was not levied or obtained for purposes of revenue. But this argument, it seems to us, is fallacious. The tax was levied and raised for the purpose of paying the interest and principal on a part of the State's indebtedness. How else does the

State pay off her indebtedness except by money raised by taxation? When money is once raised by taxation it is revenue, without regard to the question as to what specific purpose it is appropriated or applied. It is usual and customary to levy a certain rate of taxes for special purposes, as, for instance, a certain amount to pay off interest, or to support and maintain schools, etc. The ordinance says that the tax collected and assessed shall be applied to the payment of certain obligations for which the State is bound. This is the only way in which the State can discharge her indebtedness by the collection of taxes, and it is one of the very objects for which taxation is resorted to. The fact that it is levied on the parties primarily liable does not render it invalid, provided there was no constitutional barrier in the way prohibiting the discrimination.

It is admitted by the agreed case that the bonds of the corporation are outstanding and have never been paid. But the agreed case nowhere finds that the ten per cent. tax levied upon the gross earnings of the road decreased the fund to such an extent as to endanger the prompt payment of interest on the preferred bonds in any manner, or to shut out any of the distributees prior in order to the claims of the State for interest. I cannot, therefore, see that the ordinance is obnoxious to the charge of impairing the obligation of a contract, and I think also that it provides for nothing more than the legitimate exercise of the power of taxation. The question whether there was any informality in the matter of making the assessment, need not be discussed. If the ordinance was valid, the assessor had jurisdiction, and in such a case the collector cannot be held responsible for any informal or irregular proceeding of the assessor.

It follows, therefore, that the judgment of the Circuit Court. must be reversed. Judge Bliss concurs. Judge Adams was not. a member of this court when the case was argued.