# MUMFORD *v.* SEWALL.

TAXATION—MORTGAGES SUBJECT TO.—The state has power to tax a mortgage as such, in the county where recorded, irrespective of the residence of the owner of the mortgage.

IDEM.—A law taxing mortgages owned by non-residents does not impair the obligation of contracts, whether the mortgage contracts were made before or after the passage of the law. *Semble,* that such a law is not a bill for raising revenue.

IT is sufficient that the original bill on file in the office of the secretary of state shows that the act was read on three several days as required by sec. 19, art 4 of the constitution.

APPEAL from Multnomah County.

*Dolph & Simon*, for appellant.

*M. F. Mulkey and Henry McGinn*, for respondent.

By the Court, WALDO, J.:

The act of October 26, 1882, entitled "An act to define

the terms 'land' and 'real property' for the purpose of taxation and to provide where the same shall be assessed and taxed, and to declare what instruments whereby land or real property is made security for the payment of a debt shall be void, and to repeal sections 2 and 7 of chap. 50 of the miscellaneous laws of Oregon," provided that a mortgage of real property should, for the purposes of taxation, be deemed to be real property, and should be assessed and taxed to the owner thereof in the county where recorded. Section 7 of the act made it the duty of the county clerk when requested by the owner of a mortgage, recorded in his office, to record in the margin of the record of the mortgage all payments made on the indebtedness which such mortgage was given to secure. The respondent, in pursuance of such act, requested the appellant, the county clerk of Multnomah county to record, in the margin of the record of a certain mortgage recorded in his office, certain payments made thereon. The appellant refused to make the record. The respondent thereupon applied to the circuit court of Multnomah county for compulsory process, which resulted in a peremptory writ of mandamus requiring said clerk to make such record. The appellant brings the case here where he assails the act as impairing the obligation of contracts and unconstitutional, in so far as it attempts to tax mortgages held by non-residents, the respondent having averred in her petition that she was a resident and citizen of the state of New York.

. All subjects, things as well as persons, over which the power of the state extends, may be taxed. "The sovereignty of the state extends to everything which exists by its own authority or is introduced by its permission." (Marshall, C. J., *McCulloch* v. *The Bank of Maryland,* 4 Whea., 429.) The act of October 26, 1882, taxes mortgages *as such* as

well as mortgage debts. (See *People* v. *Whartenby*, 38 Cal., 468.) But the power to tax the debt is not involved in the question submitted, and sufficient to the day is the evil thereof. A mortgage, as such, is incorporeal property. It may be the subject of taxation; for "the objects and sources of taxation are, in general, bounded only by the jurisdiction or territorial limits of the state, and extend to and embrace all privileges, rights, property, or franchises not exempted in the organic law." (Sneed, J., *Harrison* v. *Willis*, 7 Heisk, 41.) Concede that the debt accompanies the respondent's person and is without the jurisdiction of the state. But the security she holds is Oregon security. It cannot be enforced in any other jurisdiction. It is local in, Oregon absolutely as the land which it binds. Cases like *Arapahoe* v. *Cutter*, 3 Col., 349, and *Davenport* v. *Railroad Co.*, 12 Iowa, 539, 547, involved questions of legislative intent—of construction, not of power. But in the act before us there is no question as to the legislative intent. The question is wholly one of power, and, since the power of the state over the mortgage is as exclusive and complete as over the land mortgaged, the mortgage is subject to taxation by the state, unless there is constitutional limitation to the contrary.

We have seen that the mortgage contract is governed solely by the laws of Oregon, no matter where the parties to it may reside. If, therefore, an act taxing mortgages impairs the obligation of contracts, it impairs such obligation in every case of mortgage, irrespective of the residence of the parties to it. In considering this part of the case, therefore, the question of residence or citizenship cannot figure. It has already been shown that the state has the power, abstractly, to tax mortgages, as such. It follows that the only ground on which it can be claimed that the

6

act of October 26, 1882, impairs the obligation of the mortgage contract is that the act was passed after the contract was made. But the law simply taxes property created by the contract. The state has the power to tax property exempt from taxation at the time it was acquired. A tax on a new subject or an increased tax on an old one does not impair the obligation of contracts. (*North Missouri Railroad Co.* v. *Maguire*, 20 Wall., 61; S. C. 49 Mo., 499, and authorities cited.) Hence, the fact that the mortgage was not subject to a tax at the time it was made, does not deprive the state of the power to tax it by a subsequent act. The state has done nothing more than to tax property which was exempt from taxation before the passage of the act. The objection that the law impairs the obligation of contracts is altogether unfounded.

Counsel for the appellant cite the case of the State Tax on Foreign Held Bonds, 15 Wall., 300. If the question presented in this case was the power of the state to tax the mortgage debt it would be difficult, on principle, to distinguish that case from the present; for the petition of the respondent alleges that the debt was payable in New York. That question, as has been said, does not now distinctly arise. It may be observed, however, of that case that we feel less hesitation in expressing some difficulty in fully appreciating the grounds on which it rests, since a very strong minority of the court were of a contrary opinion. There is some obscurity in the application of principles, such as were announced in *Baldwin* v. *Hale*, 1 Wall., 223, and like cases, to the case then in hand. It does not clearly appear that the law of Pennsylvania had an extra territorial operation on contract obligations in New York. There is some ground to say that it operated on them in Pennsylvania as they actually existed there. When the citizen of

New York loaned his money in Pennsylvania, and took the obligation of one of its citizens for its payment, the laws of Pennsylvania immediately gave him a right to enforce this obligation. They protected the right without which the obligation would be valueless, and this right was property. (*Harrison* v. *Willis*, 7 Heisk., 44.)

In *Duer* v. *Small*, 4 Blatch. C. C., 265, it is said: "The owner of property within the limits of a state, no matter whether the property be real or personal, and no matter where the owner has his domicile, has a right to call upon the government of the state to protect such property by its laws, and by its officers acting under such laws. But such protection cannot be afforded unless means, by the way of taxes, are furnished to afford the protection. * * * If a non-resident does not wish to pay for such security and protection, he can withdraw his personal property from the state, and thus free himself from such payment. There is no law which compels him to put his property under the protection of the laws of a state of which he is not a citizen or resident. But while he asks and demands protection from the laws, there is no good reason why he should not pay for it—no good reason why he should demand that the property of the resident should pay for it."

Some of us have considerable doubt whether the bill is not properly a bill for raising revenue, and therefore in violation of sec. 18 of art. 4 of the state constitution, because it originated in the senate. But it is not sufficiently clear that a law which merely declares that certain property theretofore exempt from taxation, shall thereafter be subject to taxation, is strictly a law for raising revenue. We do not feel warranted, therefore, as at present advised, in declaring the law unconstitutional on this ground.

The senate journals do not show that the bill was read on

three several days, or that such reading was dispensed with, as required by sec. 19 of art. 4 of the constitution. But the original bill on file in the office of the secretary of state shows that the bill was read as required by the constitution. (*People* v. *Commissioners of New York*, 54 N. Y., 276; *People* v. *Mahoney*, 13 Mich., 481; *Berry* v. *Railroad Co.*, 41 Md., 403.

Judgment affirmed.