SAVINGS & LOAN SOC. v. MULTNOMAH COUNTY et al.

(Circuit Court, D. Oregon. February 19, 1894.)

No. 2,062.

1. TAXATION—PROPERTY—MORTGAGES—WHERE TAXABLE.
   The rights conferred by a real-estate mortgage are, in their very nature, rights attached to land, and hence such mortgages may properly be made taxable in the state and county where the lands lie, without regard to the residence of the owners of the mortgages, or to the fact that the instruments themselves are in the possession of the owners.

2. SAME—IRREGULARITIES—CORRECTION—JURISDICTION OF FEDERAL COURT.
   The statutes of Oregon provide that real estate—which includes real-estate mortgages—shall be assessed at its actual value. Complainant, the nonresident owner of mortgages on lands within the state, filed its bill in the United States circuit court, alleging that the state board of equalization had "arbitrarily" assessed all the mortgages at their full value, while lands were assessed at only 65 per cent. of their actual value. It also alleged that this was done in order to "discriminate against mortgages, and especially against those held by complainant," but no facts were set up in support of this conclusion; and it prayed an injunction against the collection of the tax so assessed. *Held*, that the federal court has no authority, under the circumstances, to correct the inequality, and an attempt to that end would be an unwarrantable interference with state affairs.

In Equity    On demurrer. Bill by the Savings & Loan Society against Multnomah county and Penumbra Kelly, sheriff, for an injunction. Demurrer sustained.

Milton W. Smith, for plaintiff.
John H. Hall, for defendants.

BELLINGER, District Judge. The complainant is a California corporation, and has a large amount of money loaned in this state upon the security of real-estate mortgages. These mortgages are recorded in Multnomah county, but are alleged to be without the state, in the possession of the complainant, in the city of San Francisco. It is alleged that, in obedience to a custom long established, all the real estate in the county, and all mortgages upon such real estate, were each assessed for the year 1892 at 50 per cent. of their cash value; that thereafter the state board of equalization arbitrarily, and for the purpose of discriminating against mortgages, and especially against the mortgages of the complainant, increased the assessment upon lands to 65 per cent. of their cash value, and increased the assessment of mortgages to 100 per cent. of such value; that such assessment subjects mortgages to a greater tax, proportionately, than lands are subjected to, and is grossly out of proportion to the values involved; that the sheriff threatens to sell

the lands mortgaged and the mortgages of the complainant, and will do so unless restrained by order of the court. To this complaint a demurrer is filed, upon the ground that it does not state facts which entitle the complainant to the relief prayed for. By the laws of this state, mortgages upon real property within the state are declared to be, for the purposes of assessment and taxation, real estate, and are taxable within the county where the mortgaged lands are. This statute has been upheld by the supreme court of the state in Mumford v. Sewall, 11 Or. 70, 4 Pac. 585, where it is held that the state may tax real-estate mortgages where the mortgaged land lies, without regard to the domicile of the owner, or the situs of the debt or note secured thereby. This court held the same way in the case of Dundee Co. v. School Dist., 19 Fed. 359. In that case, Judge Deady, referring to the question of the situs of the property taxed, said:

"The maxim so much relied on by the plaintiffs—that personal property follows the person of the owner—is but a legal fiction, invented for useful purposes, and must yield whenever the purposes of convenience or justice make it necessary to ascertain the fact concerning the situs of such property. In cases of attachment and for purposes of taxation it is constantly disregarded, as the following cases will show: Catlin v. Hull, 21 Vt. 153; People v. Commissioners of Taxes, 23 N. Y. 225; People v. Home Ins. Co., 29 Cal. 533; Green v. Van Buskirk, 7 Wall. 150. And the case of State Tax on Foreign-Held Bonds, 15 Wall. 300, cited and also much relied on by plaintiffs, only decides that a state law which comes between the foreign lender and the local borrower, and compels the latter to pay a portion of the interest due the former on his debt, as taxes to the state, is void because it impairs the obligation of the contract between the parties; and this same ruling could as well have been made on this ground if the parties had both been citizens of the state seeking to impose the tax."

Without reference to the statute which provides that mortgages of land shall, for the purposes of assessment and taxation, be deemed to be real estate, the right secured by mortgage attaches to the land. It has no other locality,—no extraterritorial existence. If the right follows the person of the owner, then it must be enforceable where the person is, without regard to the location of the mortgaged premises, since a right which is not enforceable in a particular locality cannot be said to have a legal existence there. This principle is contained in the maxim, "Where there is a right there is a remedy." All recording acts relating to mortgages as well as deeds of realty recognize this fact, and, in conformity with it, the records of mortgages, which are intended to impart notice of the mortgagees' rights, are by an invariable rule required to be kept in the county where the mortgaged land is located; and in this state such record, in addition to being notice, is evidence of the mortgagee's right, and has the like force and effect as the original as evidence in any court of the state.

The second ground relied upon by the complainant is the alleged fact that the assessment of mortgages is higher than that of lands and lots, and has the effect to compel the mortgagees to pay more taxes, proportionately, than owners of other real estate are required to pay; and it is alleged that such assessment upon mortgages was made by the board of equalization arbitrarily, and with

the willful and deliberate purpose to discriminate against mortgages, and especially against the mortgages of complainant. Assuming that the assessment complained of is unequal, this court cannot assume the function of correcting such inequality. It will not undertake to supervise the operation of the taxing machinery of the state. Such interference in the affairs of a state would be intolerable. If the inequality complained of was the result of a statute of the state, designed to discriminate injuriously against any class of persons or species of property, or if it resulted from a combination of officers making assessments, who adopted a principle of valuation necessarily having such result, the court would give relief. Bank v. Kimball, 103 U. S. 735. True, it is alleged that the assessment complained of was made by the board of equalization arbitrarily, and with the willful and deliberate purpose to discriminate against mortgages, and especially against those of the complainant; but this is a mere conclusion, not warranted by any fact alleged in the complaint. The alleged purpose to discriminate against the mortgages of the complainant is contradicted by the fact that the increase in the assessment of mortgages applies indiscriminately to all mortgages. The assessment complained of, so far as it relates to the complainant's property, is in conformity with the statute, which requires property to be assessed at its value. The complaint is that other property is assessed too low, and that this is unjust to the complainant, since it results in making it pay more than its just proportion of taxes. But it is settled that mere irregularities or injustice in the tax will not authorize an injunction. State Railroad Tax Cases, 92 U. S. 613, and cases cited. In the case just cited the court says:

"Perfect equality and perfect uniformity of taxation as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized. * * * Let us suppose that the complaints made in these cases against the taxes were well founded; that the mode adopted by the board of equalization to ascertain the value of the franchise and capital stock is not the best mode; that it produces unequal and unjust results in some cases; that the same is true of the mode of ascertaining the basis of assessment for the taxation by municipalities; that the board of equalization increased the entire assessment on each company without sufficient evidence,—in short, let us suppose that in these and many other respects the proceedings were faulty and illegal; does it follow that in every such case a court of equity will restrain the collection of the tax by injunction, or will enjoin the collection of the whole tax, when it is obvious that, in justice, a large part of it should be paid, and, if not paid, that the complainant escapes taxation altogether?"

As to the alleged inequality of the tax complained of, it is a sufficient answer that the complainant has not offered to pay any tax,—to do the equity that is required of it; and for this reason, if for no other, the injunction should be denied. But I do not place the decision of the case upon this ground. The assessment complained of is in pursuance of a law of the state, the validity of which is not questioned. There is no claim of fraud in the assessment made, nor of inequality between the assessment of the complainant's property and that of the same class belonging to all other persons. The property in question is assessed at its cash value, as the law re-

quires. The matter resolves itself into a complaint that this class of property is assessed, proportionately to its cash value, at a higher rate than one other class of property. It is not within the power of the court to correct such inequality, nor is it practicable or desirable that it should be so. The demurrer is sustained.