Mr. Justice Shepard
delivered the opinion of the Court:
There are three propositions of law in this case, the soundness of which it is incumbent upon the appellant to maintain, in order to procure a reversal of the judgment. These are: (1) That the defendant can be held liable in person for money demanded and received by him in his official capacity of Treasurer of the United States, under an act of Congress *198 which may be found to be void; (2) That the journals of Congress may be brought into court and inspected in order to ascertain where, and in what form, a bill may have originated, and in which house the amendment that may have converted it into a bill for raising revenue was first offered and adopted; (3) That the revenue clause of the act under consideration is of the nature of an independent and original bill for raising revenue, that was injected into the body of a House bill for another and different purpose, in violation of the prohibition of the Constitution.
In the view which we have taken of the merits of the cause, as involved in the third of these propositions, it is not necessary that we should now decide the questions raised in the first and second. Interesting and important as they are, we think it wiser to pretermit their discussion and decision in this case, and to let their final determination await a cause in which the necessity therefor shall become imperative. In the meantime they may be finally determined for the guidance of all the courts, in the tribunal of last resort.
Assuming, then, that the suit can be maintained against Nebeker as a private person, and also that the journals of Congress may be inspected in order to ascertain in which house the objectionable feature of the law had its origin, we come to the consideration of the main question. The contention is, that the taxing clause of the act, having originated in the Senate, is void because enacted in disobedience of the first clause of Section 7, Article 1, of the Constitution, which reads as follows: “All bills for raising revenue shall originate in the House of Representatives; but the Senate may propose or concur with amendments as on other bills.”
The time-honored and jealously guarded principle of the British Constitution which has come down to us, with modification, in the above clause, has not the same reasonable foundation for its existence in our system of government, and in the Constitution of the Federal Congress, that it has in the land of its birth; but it is nevertheless an express command that must be obeyed, and no bill can become a law of the land in disobedience of its injunction.
*199 If appellant’s- contention is well founded, the provision of the law which has been assailed must be declared void, no matter how far-reaching, embarrassing, or even disastrous, the consequences may be. But to justify the courts in overturning an act of Congress that has been passed and approved without suggestion of its unconstitutionality, and acquiesced in for more than twenty-five years without question, during which time millions of money have been demanded and collected under its so-called revenue feature, the conclusion must be logical, plain and unmistakable; the construction must be imperative.
From the statement of the case, it appears that Section 41 of the original bill, as introduced into the House of Representatives, contained a clause imposing a tax upon the circulating notes of the banks, which differs only in points of detail from the Senate’s amendment. This was stricken out, however, before the bill was sent to the Senate. If in fact this provision made the bill one for raising revenue, it might with some plausibleness be contended that as a revenue bill it did originate in the House of Representatives, and that its effect, so far as the constitutional requirement is concerned, was not altered by striking out the revenue feature therein before its passage. In this view, the action of the Senate would be but an exercise of the express power of amendment conferred in such case by the Constitution itself. We say this would seem plausible if confined to a bill, the revenue provisions of which are germane to its main subject and purpose, and not the result of an attempt to join an independent and unrelated object to that expressed in the title, for some ulterior purpose. We are not, however, sufficiently impressed with the soundness of this reasoning to base our decision upon a conclusion reached by it.
Whilst the primary object of all taxation is the raising of revenue for the support of the government, and all bills for that general purpose are “bills for raising revenue,” in the sense of the Constitution, and therefore must originate in the House of Representatives, it does not necessarily follow *200 that every bill for some other legitimate and well-defined general purpose becomes a revenue bill, in the same sense, because, as an incident to the main object, it may contain a provision for the payment of certain dues, license fees, or special taxes. This principle was indorsed by the Supreme Court of Oregon in a case where an act of the Legislature licensing the sale of intoxicating liquors was attacked under a like provision of the Constitiftion of that State, because it originated in the Senate. State v. Wright, 14 Ore., 365.
In another case in the same State the court went so far as to extend the principle to a bill subjecting mortgages to taxation, which had been exempted therefrom under previous laws, saying: “ It is not sufficiently clear that a law which merely declares that certain property theretofore exempt from taxation shall thereafter be subject to taxation, is strictly a law for raising revenue.” Mumford v. Sewall, 11 Ore., 67; followed by the Circuit Court of the United States in Dundee Mortgage Co. v. Parrish, 11 Sawyer, 92.
In Missouri, also, though not with respect to this particular constitutional inhibition, it was held that a liquor license law was a police regulation and not a bill for raising revenue. In the course of the opinion the court said: “Many fines, penalties and forfeitures become a part of the public revenues of the State that are not derived from taxation. The disposition of the fund1 derived from the license fees does not necessarily determine the character of such fees.” State v. Hudson, 78 Mo., 304.
In the case of Georgia, an act incorporating a town, was attacked in an action to recover taxes imposed thereby, on the ground that it was a bill for raising revenue and had originated in the Senate. The supreme court upheld the act on the ground that its main purpose and real object was to incorporate the town, and the-taxation feature was but incidental thereto. Harper v. Commrs., 23 Ga., 566.
The foregoing decisions are in accord with the views expressed by Judge Story in his work on the Constitution, who, after giving a brief history of the origin of the constitutional *201 provisions, says: “What bills are properly bills for raising revenue in the sense of the Constitution has been matter of some discussion. A learned commentator supposes that every bill which indirectly or consequentially may raise revenue is, within the sense of the Constitution, a revenue bill. He therefore thinks that the bills establishing the postoffice, and the mint, and regulating the value of foreign coin, belong to this class, and ought not to have originated (as they in fact did) in the Senate. But the practical construction of the Constitution has been against his opinion. And, indeed, the history of the origin of the power already suggested, abundantly proves that it has been confined to bills to! levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes which may incidentally create revenue. No one supposes that a bill to sell any of the public land, or to sell public stock, is a bill to raise revenue in the sense of the Constitution.” Story on the Constitution, Sec. 880.
Tested by the foregoing, the reasoning of which is perfectly satisfactory to our minds, we conclude that the amendment to the bill under consideration, adopted in the Senate, was not an independent measure and did not convert it into a bill for raising revenue, in the sense of the Constitution. The controlling purpose of this bill was to provide for the creation and circulation of national bank notes as money under the sanction and guaranty of the United States. It conferred valuable franchises and privileges upon the banks organized thereunder, to accomplish what was deemed a desirable purpose, and it was not unreasonable nor foreign to its general object, to accompany them with a condition, by way of a tax, or a charge, or a duty, which would not only remunerate the government for its trouble and expenses in connection therewith, but might also add something to its revenues by way of return for- the benefits conferred. Provisions for the payment of fees and charges might well, and in fact usually do, form a part of every bill enacted for the purpose of enabling persons to organize private business *202 corporations, especially where there may be an additional grant of valuable franchises.
There is no reasonable ground for holding that the Senate amendment was injected into the body of this bill without regard to its subject-matter, and solely for the purpose of raising revenue. It is plain from the history of the bill, as disclosed by the journals of both houses, that it could not have been passed without this incidental charge for the franchises and benefits conferred, and to say now that it shall stand with this feature stricken from it, would be to thwart the object of Congress and do violence to its plain intention.

There was no error in the instruction to the jury to return a verdict for defendant, and the judgment thereon must be affirmed, with costs to the appellee ; and it is so ordered.