Parker, J.
These cases which have been heard by and submitted to the judges of this court at chambers, are substantially alike in their facts, and therefore they will be disposed of together. I may, as I go along, point out certain distinctions between the. two cases, but such as exists are generally immaterial.
Applications for writs of habeas corpus in these cases were submitted to Judges Haynes and Parker at chambers, in the city of Toledo, Ohio, on the 17th inst., and the questions presented by the petitions and also those likely to be presented upon an answer to the writ, if one should issue, were very fully argued by counsel representing all parties. We allowed writs to issue, and now the matter has been submitted to and considered by all the judges of this court, who concur in the opinion that will be announced.
From the petitions it appears th arah Luetzler and May Smith were each convicted of petit larceny in the court of common pleas of Erie county, and that they were each sentenced to a term of imprisonment in the county jail, and the costs of prosecuting were adjudged against them respectively in their respective cases. The questions to be considered turn largely upon the form of the judgment and sentence in those cases. I read from the record in the case of The State of Ohio v. Sarah Luetzler, which, after setting out the proceedings up to the time that she entered a plea of guilty in the case, proceeds as follows: “It is therefore ordered and adjudged by the court that the said defendant, Sarah Luetzler, be imprisoned and confined in the jail of Erie county, Ohio, for a period of fifteen days, and pay the costs of this prosecution, taxed at $51.81, for which execution is awarded.” The entry in the case of May Smith is the same, excepting that the amount of costs that she is adjudged to pay is much larger, being $1,358.46; and it appears in her case that she was convicted by the verdict of the jury, instead of by a plea of guilty.
Now, it appears from the petitions and evidence that these, persons were taken into the custody of the sheriff of Erie county and imprisoned in the jail of that county, for the terms prescribed by these sentences; that those terms have expired; but that in the meantime a writ has been issued from that court against each of them which commands the sheriff to take the goods and chattels, lands and tenements of the defendants, *827 in satisfaction of these judgments for costs, and in default of property to satisfy the writs, the sheriff to levy the same upon the bodies of the defendants, and that in pursuance of these writs, the sheriff, failing to obtain satisfaction of the writs out of the property of the defendants, has arrested them and holds them in confinement in the county jail of Erie county, Ohio.
The answers filed upon behalf of the sheriff do not controvert these facts, but he denies that the parties are illegally and unlawfully restrained of their liberty, and this part of the answer amounts practically to a demurrer. He further says that the matters set forth in the petition are res judicata for reasons set forth in his answers. I read from the answer in the Smith case: “That on the tenth day of February, 1899, the said May Smith applied to the Honorable Linn W. Hull, judge of the cotírt of common pleas of Erie county, for a writ of habeas corpus, on the ground that she was unlawfully restrained of her liberty and imprisoned by this respondent; that the matters set forth in her said application before said Linn W .Hull, judge of the court of common pleas of Erie county, Ohio, were the same, and had reference to the same judgment and execution set forth in the petition of said J. C Smith in this proceeding; that said application came on for hearing before the said Linn W.Hull, judge of the court of common pleas of Erie county Ohio, and on consideration was by said judge denied.” Copies of said application and the orders of Judge Hull are attached to these answers, and from those copies it appears that the applications before Judge Hull were substantially the same in form and set forth substantially tne same facts as these applications made by the persons imprisoned, whereas, these applications are made by certain other persons on behalf of the persons imprisoned.
From the exhibits attached it appears that upon these applications being made to Judge Hull, he heard arguments of counsel and refused to issue the writs, and that the cases proceeded no farther before him.
Now, it is said that this a matter res judicata, and that therefore a second application to another court or other judges for discharge from this imprisonment while the facts remain the same and acted upon can not be entertained..
We have given this question careful consideration and have examined a great many authorities bearing upon it, and we find that by a great weight of authorities both in England and throughout the states of this country, it has been determined that the decision of one court or officer upon a writ of habaes corpus refusing to discharge a prisoner, is not a bar to the issuing by another court or judge of another writ, based upon the same facts. Among other cases in which this is held, we cite King v. McLean Asylum, etc., 64 Fed. Rep., 331, calling attention to the last clause of decision.
In re Kane 3 Blatchford, p. 1.; People v. Brady, 67 Howard Pr., 362; Blair’s Petition, 4 Wis., 322; in re Snell, 31 Minn., 110; ex parte Lyon, 19 Tex. Appeal, 120; Howe v. State, 9 Missouri, 690; ex parte Ellis, 11 Call, 222.
I read from the case entitled in re Snell, above cited:
“Upon the general question involved in this proposition, there is some difference among courts and text writers. But research and reflection have brought us to the conclusion that the sound-rule and that supported by a great weight of long standing authority, is that the decision upon habeas corpus of one court officer refusing to discharge a prisoner’s application upon the same state of facts as at first, to another court or officer, and to^ a hearing or a discharge thereupon is admissible. We cite a few authorities: A decision under one writ of habeas corpus, refusing to discharge a prisoner, does not bar the issuing of a second *828 writ by another court or officer. People v. Brady, 56 N. Y., 182, 192. This would appear to overrule intimations of earlier New York authorities. A decision under the writ of habeas corpus, refusing the discharge of a prisoner, is no bar to the issuing of any number of other successive writs by any court or magistrate having jurisdiction. Ex parte Kaine, 3 Blatch, 1, 5, per Nelson, J.: T feel no difficulty in delivering the opinion which I entertain, because the prisoner will not be concluded by it, but may, if he be dissatisfied, apply to the other courts of Westminster Hall.’ King v. Suddis, 1 East., 306, 314. Per Lord Kenyon: ‘This case has already been before the Queen’s Bench on the return of a habeas corpus, and before my Lord Chief Barron at chambers, on a subsequent application for a similar writ. In both instances the discharge was refused. The defendant, however, has a right to the opinion of every court as to the propriety of his- imprisonment;’ Ex parte Parington, 13 M. & W., 679; M. & W. 679, 682, per Parke, B.
“In some courts there appears, to be a disposition to make the right to a second writ a question of expediency for the court to determine. This occurs to us to be a dangerous notion. The ‘Writ of Liberty, is a writ of right. When we consider its origin, its history and its purposes, the transcendent necessity of its issuance, dependent upon the right of the petitioner and not upon the discretion of anybody, is incontestable.
“It may be urged that to allow the issue of successive writs will be intolerable and oppresive to the courts and to the public law offices. To this there are several answrs: First. Businss of this kind is ordinarily controlled and conducted by an honorable profession. Second. Experience is to the contrary. We may rest with comfortable assurance upon the fact that, after many years trial in this country and centuries of trial in England, the right to successive writs has not been found to work any serious practical inconvenience. See remarks of Allen, J., in People v. Liscomb, 60 N. Y., 567, at bottom. Third. If the inconveniences were great, the citizens’ right to liberty is greater.”
What I have read answers the objections made in the course of argument before us, to the rule that repeated applications may be made to different courts or judges.
There are some decisions to the contrary, and some which hold that where a right of appeal or to prosecute error to the refusal of a judge to discharge upon a writ of habeas corpus is given by the statute, a change in- this general rule is thereby effected, so that the right to prosecute on appeal or on error is made the exclusive remedy; and that after one refusal another application to another court or judge cannot be entertained. And it is urged that since our statute has provided by Sec. 5751 for a review upon error this should be an exclusive and not a cumulative remedy. But it will be seen fhat that section provides for the recording of the proceedings by clerks of courts and a review on error where the proceedings are upon a writ of habeas corpus; the section reads as follows:
“The proceedings upon a writ of habeas corpus shall be recorded by the clerks respectively, and may be reviewed on error as in other cases.”
Where a case has taken this course it seems that by sec. 6709, Rev. Stat., as amended March 17, 1898, (93 O. L., 56), error may be prosecuted to the order of the court on error, and may likewise be prosecuted if the order is that of a judge of the court.
But in these cases, as already pointed out, writs of habeas corpus were not issued by Judge Hull, and therefore, under the plain reading of that statute, there seems to be no provision for rcording what actually occurred before Judge Hull, and no provision for reviewing the same- *829 upon error. We think therefore that the distinction between the order of the court or judge refusing to issue a writ and the order of a court or judge upon a hearing after issue joined by return upon the writ or answer to the petition, is like that made in mandamus as illustrated in the case of the State v. Capeller, 37 O. S., 121, and State v. Ottinger, 43 O. S., 457, in the first case it having been held that error could not be prosecuted to the action of the courts in refusing an alternate writ of mandamus, in the second case it having been held that error could be prosecuted to the order of the court in refusing to. allow a peremptory writ of mandamus after a hearing upon issues joined.
But however this may be, it does not appear that the right to renew the action of the judge in a case of habeas corpus upon refusal to issue the writ, or upon issue joined after the writ has been issued, is a full, complete and adequate remedy in all cases; for, while error may be proecuted to such order in the last instance, there is no provision'of law for the taking of a bill of exceptions upon a hearing before a judge, and therefore a party might be unable to bring to the attention, of the reviewing court the real facts upon which he claimed to be entitled to his discharge.
We think, therefore, upon" consideration of these authorities, that what has been set forth in the answers as res judicata does not amount to a good plea at bar, and does not stand in the way of our proceeding to act upon this application; neither does it afford us just ground for refusing to act.
We come therefore to the consideration of the question whether this imprisonment to enforce the collection of these costs under this form of judgment is unlawful. Unquestionably clear authority to imprison to enforce the collection of a debt of any description must be found in the law; otherwise such imprisonment will be unlawful, Lougee v. State, 11 O. 68 to 70. It is equally clear that if the court in these cases was authorized to enter judgment that these persons should be imprisoned until the fine and costs were paid, in the absence of such judgment an execution, such as was issued in this case, might issue and the persons might be "lawfully imprisoned. In re Beall, 26 O. S., 195.
It is contended on behalf of the respondent that authority, to issue such writ in these cases is found in sec. 7328, Rev. Stat., which reads as follows:
“When a magistrate or court renders judgment for a fine an execution may issue for the same and the costs of prosecution to be levied on the property, or in default upon the body of the defendant, and the officer holding such writ may arrest the defendant at any time and commit him to the jail of the county in which the writ was issued, to remain there until the fine and costs are paid or secured to be paid, or he is otherwise discharged according to law.”
On the other hand it is contended that the provision that this may be done in cases where a judgment is rendered for a fine contains a very plain and important limitation upon the right to issue such writ, and our attention is called to secs. 1846, 1866 and. 1787, Rev. Stat, which contain similar provisions and limitations. Section 1846 is a part of the ■statute on the subject of the police powers of certain magistrates and provides that when a fine is the whole or a part of the sentence, the ■court, or mayor, or president of the board of trustees, may order that the prisoner sentenced shall remain in the county jail, workhouse or prison until the fine and costs are paid or secured to be paid, or the offender be otherwise legally discharged.
*830 Section 1866, Rev. Stat., also a part of the municipal code, contains a like provision to the effect that when a fine is imposed, process may issue under which the person of the party adjudged to pay the_fine and costs may be taken. Section 1787 Rev. Stat., contains a like provision as to police courts.
Now we cannot think that these provisions which seem plainly to limit the right to the use of such writ, known as a capias ad satisfaciendum, are accidental. We have no doubt but that it is competent for the legislature to provide that a person may be arrested on execution and imprisoned as a part of the process for collecting costs only; — I mean in cases where fines are not imposed as a part of the penalty: — -but is seems clear to us that the legislature has not done so, but that it has given the right only where a fine is imposed as a part of the penalty, except in one instance, where, under sec. G801b, Rev. Stat, a person may be sent to the workhouse in an adjoining county.
We think the effect of these provisions is that where a fine is imposed by the court, the imposition of such fine results in making the costs also a part of the sentence; and the awarding of this writ for the collection of such costs, where a fine is not imposed amounts to an order or direction of the court saying that such writ shall not issue. It is certainly an easy and convenient method by which the court may determine when the writ shall and when it shall not issue; and that is a matter left; we think very properly, within the discretion of the court, to be exercised according to the circumstances of the case it may have to deal with; so also the court may, in its discretion, adjudge that a party may be confined until the fine and costs are paid, and in such case no writ other than a mittimus setting forth the judgment, need issue. It is provided by sec. 6700, Rev. Stat., that a judgment against the defendant for costs shall follow in all cases upon a conviction; but such judgment, unless made a part of the sentence, in the manner above pointed out, we think has no higher dignity or greater force than an ordinary judgment for money in a civil action.
The distinctions here suggested are in harmony with the views of the Supreme Court of Ohio as expressed in the case of Libby v. Nochola, 21 O. S., 414. It is there held that a pardon operates upon the sentence, whether imprisonment or fine, but does not operate to release the judgment for costs; and in ‘the course of his opinion, White, Judge, speaking for the court, distinguishes, we think, very distinctly, between the sentence and the judgment for costs, the latter being an ordinary incidental result of the conviction.
It is said that the authority to issue an execution authorizing the taking of property upon judgments of this character cannot be found elsewhere in the statutes than in sec. 7328, Rev. Stat., and that the writ therein provided authorizes the taking of the person as well as the property, and that if it shall be held that such a writ may issue only in a case where there is a judgment for a fine, then in all cases where no fine is imposed there is no means provided for the collection of the costs.
If this were true it might result in great inconvenience; and yet, if there has been this oversight on the part of the legislature, we do not think it would authorize us to put a strained construction upon this statute as against the right of personal liberty. As before stated, the right to imprison in a given case should be clear and explicit; otherwise it should be held to not exist.
We think, however, that_ authority for the issuing of an ordinary fieri facias upon a judgment which is in effect a civil judgment, as we hold these judgments for costs to be, may be found in section 1318 and other sections immediately following.
*831 _ Even- the entertaining of serious doubts upon this question is sufficient to require the court, under the rules governing the construction, of penal statutes, and those to be applied in favor of personal liberty, to take the view that imprisonment is not authorized, and ..upon the whole we conclude that this is a correct construction of this statute.
It follows therefore, that the imprisonment of these defendants is unlawful and their discharge will be and is hereby ordered.