DUNDEE MORTGAGE, TRUST INVESTMENT Co. *v.* SCHOOL-DIST. No. 1, MULTNOMAH Co., and others.

*(Circuit Court, D. Oregon.* March 6, 1884.)

1. MULTIPLICITY OF SUITS.
    Equity has jurisdiction to enjoin the collection of a tax levied under an invalid law, when necessary to prevent a multiplicity of suits.
2. STATE STATUTE INVOLVING FEDERAL QUESTION.
    In construing or determining the validity of a state statute involving a federal question, the national courts are not bound by the decision of the state court. .
3. IMPAIRING THE OBLIGATION OF A CONTRACT.
    At the date of the execution of a note and mortgage, the law of the state required the mortgaged premises to be assessed at their full cash value for taxa-

tion, and afterwards an act was passed requiring the note and mortgage to be assessed at its par value for taxation, and exempting so much of the land from taxation; *held* that the latter act did not impair the obligation of the contract between the creditor and the debtor.

4. STATE POWER OF TAXATION.

The state has power, so long as it does not trench upon the constitution of the United States, to tax all persons, property, and business within its jurisdiction or reach; and whether any person, property, or business is so within its jurisdiction is not a federal question, and must be determined by the state for itself.

5. UNIFORM AND EQUAL TAXATION.

An act of the legislature, providing for the taxation of mortgages as land, which, in effect, exempts all such mortgages from such taxation upon land in more than one county, violates section 1 of article 9 of the constitution of the state, which requires that taxation shall be uniform, and imposed according to its value, upon "all property" not specially exempted therefrom, and is therefore void and of no effect; and, *semble*, that such act is also a "special" one for "the assessment and collection of taxes," and therefore in violation of subdivision 10 of section 23 of article 4 of the constitution of the state.

6. DUE PROCESS OF LAW.

The enforcement by the state of a tax levied under a void law is a deprivation of property without due process of law, contrary to section 1 of the fourteenth amendment to the constitution of the United States.

Suit to Enjoin the Collection of a Tax.

*William H. Effinger, Charles B. Bellinger,* and *W. D. Fenton,* for plaintiff.

*William B. Gilbert, H. Hurley,* and *Walter W. Thayer,* for defendants.

DEADY, J. This is an application for a provisional injunction on the bill filed herein, on December 31, 1883, to restrain the defendants hereinafter named, and others, from selling and disposing of sundry notes and mortgages belonging to the plaintiff, for the non-payment of taxes levied thereon, in the district and counties where the mortgaged premises are situate, under the provisions and by the authority of the act of the legislature of Oregon, entitled "An act to define the terms 'land' and 'real property' for the purposes of taxation, and to provide when the same shall be assessed and taxed," etc., approved October 26, 1882. The defendants—the school district No. 1, and George C. Sears, the sheriff of Multnomah county—were duly served with a subpœna to answer, and an order to show cause why the provisional injunction should not issue; and the defendant E. B. Collard, the sheriff of Yamhill county, appeared and showed cause against the application, without service. None of the other defendants were served with the subpœna or order, or appeared.

From the bill it may be gathered that the plaintiff is a foreign corporation, duly incorporated under the laws of Great Britain, with its "principal office at the burg of Dundee, Scotland." That for some years it has been and now is carrying on in this state, and by the permission thereof, the business of loaning money upon promissory notes secured by mortgage or real property therein, and payable in a certain period of years, with lawful interest, at Dundee,—each of such notes containing, in addition to the ordinary promise to pay, these

words: "This note is given on an actual loan secured by a mortgage, by the terms and conditions of which this note is to be governed." That the money thus loaned is obtained from residents of Great Britain "on bonds or mortgage debentures" that entitle the holders thereof to be paid out of the assets of the plaintiff, including these notes and mortgages. That the plaintiff, as the successor and assignee of sundry similar corporations heretofore organized in Dundee, and engaged in the like business in Oregon, is the "owner and holder" of certain notes and mortgages made and executed to said corporations for money loaned in Oregon, and is also the "owner and holder" of certain other notes and mortgages made and executed to itself for money loaned therein, amounting in the aggregate to two and a half millions of dollars; upon all of which said "bond and debenture holders" have a lien for the money advanced by them to the plaintiff and its said assignors. That the said loans were all made before October 26, 1882, except one in Marion county for the sum of $19,000, and that they will become due and payable at periods varying from one to five years hence. That the notes and mortgages aforesaid were made and executed within this state, and afterwards transmitted to the "home office, Dundee," where they are kept until the borrower desires to pay the same, when they are returned here for that purpose. That the defendants, the school districts No. 1 and No. 18, and the several counties of which the other defendants are the sheriffs, respectively, have assessed said notes and mortgages, under the act of 1882, aforesaid, for taxation, within the respective districts and counties, so far as the mortgaged premises are therein situate—said district No. 1 having assessed the same within its limits at $165,510, and levied a tax thereon of $827.55; the county of Multnomah at $209,600, and levied a tax thereon of $3,269.76; and the county of Yamhill at $———, and levied a tax thereon of $834.46. And said defendants have demanded payment of the same, and are about "to coerce the payment" thereof, by the sale of the notes and mortgages so assessed. And that said assessment and levy are unlawful, because the act under which they were made, and the defendants are proceeding, is void and of no effect, for the reason that it is contrary to the constitution of the United States, and the state; and that such debts and mortgages are beyond the jurisdiction of the state.

From the affidavit of the defendant George C. Sears, filed at the hearing, it appears that "several" of the notes and mortgages assigned to the plaintiff and assessed for taxation in school-district No. 1 and the county of Multnomah "were made to William Reid, manager," and payable in the state of Oregon; that the corporations of whose notes and mortgages the plaintiff has become the owner by assignment, as aforesaid, during all the time they did business in Oregon had a managing agent residing herein, and duly appointed under the laws of Oregon, concerning foreign corporations doing business here, (Or. Laws, p. 617, §§ 7, 8;) and the plaintiff, during

the period it has done business here, has had a like agent in the state, whose business, in either case, it was and is to receive applications for loans and make the same; that in the course of such business such agents have retained in this state all money received on said loans, whether of principal or interest, and reloaned the same herein; and that a "large proportion" of the mortgages, upon which the collection of the tax is by this suit sought to be enjoined, were made to secure loans of money so received and reloaned within this state.

The act of 1882 provides that a mortgage, "whereby land or real property situate in no more than one county of this state, is made security for the payment of a debt, together with such debt, shall, for the purpose of assessment and taxation, be deemed and treated as land or real property," (section 1,) and "shall be assessed and taxed to the owner of such security and debt in the county, city, or district in which the land or real property affected by such security is situated;" and "the taxes so assessed and levied on such security and debt shall be a lien thereon, and the debt, together with the security, may be sold for the payment of any taxes due thereon, in the same manner and with like effect that real property or land is sold for the payment of taxes." Section 2. The owner of such mortgage, "for the purpose of assessment and taxation" shall "be deemed to be the person to whom the security was given in the first instance," unless the contrary appears on the record thereof; and "all assignments and transfers of a debt" so secured shall, for the purposes aforesaid, "be null and void," unless the same "is made in writing upon the margin of the record of the security;" and all mortgages "hereafter executed, whereby land situated in more than one county in this state is made security for the payment of a debt, shall be void." Section 3. For the purposes aforesaid, no payment on any debt so secured shall hereafter be considered by the assessor unless indorsed "on the margin of the record of such security;" and "the assessor shall assess such debt and security for the full amount of such debt that appears from the record of such security to be owing," unless in his judgment the property by which such debt is secured is not worth that amount, in which case he shall assess the same "at their real cash value." Section 4. A debt so secured on "property situated in no more than one county in this state, shall, for the purposes of taxation," be considered "as indebtedness within this state," and the person owing the same may deduct the amount from his assessment as such indebtedness." Section 8. No "writing which is the evidence of a debt," wholly or partly so assessed, "shall be taxed for any purpose in this state," but such debt and "the instrument by which it is secured, shall, for the purpose of assessment and taxation," be deemed real property, and "together be assessed and taxed" as therein provided. Section 10.

Sections 5, 6, and 7 of the act relate to the duties of the county clerk in furnishing the assessor with a statement of the unsatisfied mortgages on record in his office, and recording the assignments of such mortgages and of all payments thereon.

The real purpose and intent of this act is not far to seek or hard to find. And, *first*, it is not, as suggested in the brief of counsel for the defendants, to tax the mortgagee's interest in the land to the mortgagee and the remainder to the mortgagor. But the purpose is to tax the "debt" of the mortgagee and "the instrument by which it is secured," and by deducting the amount thereof from the value of the land so far exempt it from taxation. In other words, it is a scheme to tax the debt of the mortgagee, and so far exempt the land of the mortgagor; and not only this, but to tax the debt, not at the residence of the creditor, but the debtor, in the county or district where the mortgaged premises are situate. The debt and mortgage are not the land, and not even a legislative act can make them so; but they are to be deemed and considered such, as a matter of convenience, for the purpose of assessment and taxation, and the collection of the tax.

For many years prior to this act the law was such that a debt was taxed, or supposed to be, at the residence of the creditor, and the debtor was allowed to deduct the amount thereof from his assessment, provided the debt was owing in the state. The result was that the par value of the domestic indebtedness of the country, being deducted from the value of the land, as appraised for taxation, about one-third of its cash value, the value of lands left subject to taxation was very much reduced. In the rural districts, where the principal property is land, and borrowers are more numerous than lenders, the assessment rolls grew very light. The value of the land in a county, as appraised for taxation, was largely swallowed up in its indebtedness, while this was principally owned without its limits, and if it paid taxes at all, did not do so in the county where it was owing and secured, and had taken the place of the land. As an illustration, take the case of a farmer in Linn county. He owns a farm worth, in cash, $10,000. He borrows from some person or corporation in Portland $5,000, and gives a mortgage upon his farm to secure the payment of the same. The county assessor, chosen by himself and neighbors for that special purpose, estimates the cash value of the farm, for the purpose of taxation, at not exceeding $5,000, and, it may be, at only $3,000. From this false valuation the farmer is allowed to deduct his indebtedness at its par value, and thereby escapes taxation. But the county gets no revenue from $10,000 worth of land situate within its limits. Getting in debt becomes a recognized mode of escaping taxation. To correct this evil the legislature, instead of retracing the steps which led to it, by taking measures to secure obedience to the law requiring each "parcel of land" to be appraised for the purpose of taxation at its "full cash value,"

(Or. Laws, 754, § 29,) and to prevent the deduction of any indebtedness from such valuation, concluded, in its wisdom, to go further in the doubtful direction it was already traveling. 'And to this end it passed this act to secure the taxation of the indebtedness deducted from the valuation of the land in the county where the land lies, so far, at least, as it was secured thereby. And, to make this right of deduction uniform, it also allows the debtor to deduct his indebtedness from the valuation of his land, if secured thereon, without reference to the residence of the creditor, by declaring that such a debt shall be deemed an "indebtedness within this state," and therefore taxable in place of the land, and in the county where the land is situate.

Counsel for the plaintiff contends that this assessment and taxation of its notes and mortgages are illegal and void for the following reasons: (1) The act of 1882, under which it is made, impairs the obligation of the contract between the plaintiff and its debtors, by which the latter were bound to pay the taxes on the land covered by the mortgage; (2) the debts and mortgages of the plaintiff are in fact and in contemplation of law existing and owned without the limits of the state, as its residence is Dundee, and therefore beyond the jurisdiction of the state either to assess, tax, or sell; (3) this assessment and taxation are contrary to the constitution of the state of Oregon, which declares (article 9, § 1) that the "legislative assembly shall provide by law for *uniform* and *equal* rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of *all property*, both real and personal, excepting such only for municipal, etc., purposes as may be specially exempted by law," and therefore void, because the act under which it is made arbitrarily and unjustly discriminates between debts and mortgages on land in no more than one county, and those on land on more than one county, and therefore does not provide for a "uniform" assessment of debts secured by mortgage or for "a just valuation for taxation of *all property*," but the contrary; and (4) that the act of 1882 being void, the collection of the tax levied under it would so far deprive the plaintiff of its property without due process of law, contrary to the constitution of the United States. Fourteenth amendment, § 1.

The jurisdiction of the court on the ground of the diverse citizenship of the parties is admitted, and its power to grant the relief sought, on the ground of preventing a multiplicity of suits and irremediable injury, is tacitly conceded. In this respect the case falls within the rule laid down by this court in *Coulson* v. *City of Portland*, 1 Deady, 494. See, also, Pom. Eq. Jur. §§ 243–275. The validity of the act is questioned in the bill upon other grounds than these, as that it unlawfully discriminates between secured and unsecured debts evidenced by promissory notes, and that it was not passed in conformity with the requirements of article 4, § 19, of the constitution

of the state, concerning the reading of bills during their passage through the legislature. But they were not pressed on the argument.

In *Mumford* v. *Sewall*, (Daily *Oregonian*, May 25, 1883,) the supreme court of the state held that the act was duly passed, and that the legislature has the power to authorize and require the taxation of mortgages on real property in Oregon, irrespective of the residence of the owner of the debt thereby secured, and that the act in no way impairs the obligation of the contract between the parties thereto: but whether the state has power to tax such a debt when payable to a non-resident was not decided. The national courts are not bound by the judgment of a state court, sustaining the validity of a state statute, so far as a federal question is involved therein. *Louisville & N. R. Co.* v. *Palmes*, 3 Sup. Ct. Rep. 193, and cases there cited. Therefore, the question of whether the act of 1882 impairs the obligation of the contract between the plaintiff and the maker of any of these notes and mortgages, is an open one in this court.

It does not distinctly appear from the bill how the alleged obligation of the mortgagor to pay the taxes on the mortgaged premises arose. The first impression is that he directly contracted with the mortgagee to do so, but as no such contract is set out, in either words or substance, the inference is that none was made, and that the alleged liability of the mortgagor to pay such taxes was simply owing to the fact that, by the law as it stood when the loan was made, the land was taxed as the property of the mortgagor, and the mortgage was exempt. But, in any case, the act taxing the debt and mortgage of the plaintiff and exempting a corresponding value in the land from taxation does not impair the obligation of the contract. The state is no party to this contract; and its power of imposing and collecting taxes upon persons, property, and business within its jurisdiction cannot be affected or restrained by it. True, the laws in force when the mortgage is made, defining what constitutes a valid mortgage and prescribing the remedy for its enforcement, are to be regarded as part of the contract; and any essential change in these, is so far invalid as impairing the obligation of the contract. But a law imposing taxes upon the subject of the contract or the property affected by it, or exempting either therefrom, is no part of such contract; and is so far within the power of the state to alter or repeal from time to time as the public good or convenience may require.

It may be admitted that any provision in the mortgage itself or in a contemporary statute, providing who, as between the parties thereto, shall pay the taxes imposed by the state on the mortgaged premises, or the debt or mortgage itself in lieu thereof or otherwise, is beyond the power of the state to alter or modify to the prejudice of either party. To do so would impair the obligation of the contract. But when and to what extent taxes shall be levied is a question for the state to decide. Parties interested in property liable to taxation may contract, as between themselves, on whom the burden of such

taxation shall ultimately fall, but they cannot by such means limit or control the power of the state in placing or apportioning this burden in·the first instance, nor in enforcing its payment or collection accordingly.

The liability of the mortgagor to pay taxes on the mortgaged premises at the time of the execution of the mortgage was primarily to the state. It arose out of a law of the state, and not the contract with the plaintiff; and might thereafter be modified or discharged by the authority of the same, without any reference to the agreement or wishes of the parties. As a means of protecting himself against the delinquency of the mortgagor in this respect, the statute in force since 1854 (Or. Laws, p. 770, § 105) expressly provides that the mortgagee may pay any delinquent tax on the mortgaged premises, and add the amount to his mortgage, and enforce the collection of the same as a part thereof. But whether this provision, or an express agreement to the same effect, should be construed to include taxes levied under a subsequent statute on the debt or mortgage itself, or both of them, in place of the land, or so much of its value as being within the equity of the statute or contract, is a judicial question between the parties to the mortgage, and one over which the state has no legislative control. And if it should be determined in the negative it would only add another to the many instances in which statutes and contracts made in contemplation of future events have not been·found broad or full enough to comprehend and provide for all the changes and contingencies that may occur in the course of time in human affairs. But it is to be understood that the contract by which the parties to a loan or mortgage may provide between themselves, for the payment of taxes imposed thereon or thereabout, is otherwise lawful when made. Neither is it material in this connection that the holders of the mortgage debentures issued by the plaintiff in Scotland, and upon which it obtained the money loaned on these notes and mortgages, may be inconvenienced or even injured by the enforcement of this tax in the mode prescribed, or that such notes may thereby lose their negotiability. The act is not responsible for the inconveniencies which may result from disobedience to it. The restriction placed upon the negotiability of the notes by the act is only for the purpose of taxation, and can be of no inconvenience to any one·except in a case of delinquency, and then the blame must rest on the delinquent. Nor is it material, if true, that the plaintiff may not be able to pay these debenture holders the rate of interest on their money that it expected or agreed to, because of the imposition of this tax. If the power of the state to levy taxes was in any way limited or restrained by the fact that its exercise might hinder or prevent any one from performing his contract with another, it would be useless. If A. rents a mill of B., and afterwards becomes unable to pay the rent on account of a tax which the state imposes on his business, it cannot be admitted for a moment that the act imposing this

otherwise valid tax is void, on the ground that it impairs the obligation of its contract to pay the rent.    It may have impaired his ability or means of performing his contract, and so might a fire or flood, but the obligation to perform the contract would be untouched in either case.

But I suspect the truth about this complaint is that, after the payment of this tax in addition to the interest due the debenture holders, the profits accruing to the plaintiff are just so much diminished; but that may happen to any one who loans money in a country where mortgages are taxable or liable to become so.    Whether these notes and mortgages are within the jurisdiction of the state, for the purpose of taxation, is a question in this case, but not, as I understand, a federal one.    There is no provision in the constitution or laws of the United States that can be invoked to prevent the state from taxing any property on the ground that it is not within its jurisdiction. The power of a state to levy and collect taxes is not directly limited or restrained by the national constitution, except in the case of duties on "imports and exports" and "tonnage."    U. S. Const. art. 1, § 10. In a few other cases it is so restrained, incidentally and by implication, as that the obligation of a contract shall not thereby be impaired, or that the powers of the national government, or the agencies by which they are exercised, shall not be hindered or interfered with. *Railroad Tax Case,* 8 Sawy. 250; [S. C. 13 FED. REP. 722.]    All other limitations upon this sovereign power must be found either in the constitution of the state or the wisdom and justice of the legislature and people.    So long as a state does not intrench on the constitution of the United States, it may tax anything within its reach,— anything it can lay its hands on, and subject to its power.    *Kirtland* v. *Hotchkiss,* 100 U. S. 498.    It follows that this court, in deciding this question of the taxability of these subjects by the state, will be governed by the decisions of the supreme court of the state.    In *Poppleton* v. *Yamhill Co.* 8 Or. 341, it was held that notes and mortgages are personal property, and. as such, subject to assessment and taxation.    In *Mumford* v. *Sewall, supra,* as we have seen, the court held that a mortgage upon real property in this state is taxable by the state without reference to the domicile of the owner, or the *situs* of the debt or note secured thereby.    And this conclusion is accepted by this court as the law of this case.    Nor do I wish to be understood as having any doubt about the soundness of the decision.

A mortgage upon real property in this state, whether considered as a conveyance of the same, giving the creditor an interest in or right to the same, or merely a contract giving him a lien thereon for his debt and the power to enforce the payment thereof by the sale of the premises, is a contract affecting real property in the state and dependent for its existence, maintenance, and enforcement upon the laws and tribunals thereof, and may be taxed here as any other interest in, right to, or power over land.    And the mere fact that the

instrument has been sent out of the state for the time being, for the purpose of avoiding taxation thereon or otherwise, is immaterial. But the right to tax the mortgage may not give the state any direct power over the debt, when the same is actually held without the limits of the state. But indirectly it does. A sale of the mortgage, although it would not carry with it the debt, would separate them, and leave the latter without any security. A purchaser of the mortgaged premises from the mortgagor, who has or may purchase the mortgage when sold for taxes, would thus unite in himself the interest of both mortgagor and mortgagee, and hold the property discharged from the debt.

But counsel for the defendants claim that these debts are actually within the jurisdiction of the state for the purposes of taxation, on the ground that the plaintiff and its assignors in the transaction of their business here, out of which these notes and mortgages arose, maintained an agent in the state under the foreign corporation act. Or. Laws, p. 617, §§ 7, 8. As to any of the foreign corporations required by that act to appoint an agent to represent it within the state, before doing business here, it is clear to my mind that, as to such business, and for the purposes of taxation, it is a domestic corporation, having a residence within the state. But in the case of *Oregon & Wash. T. & I. Co.* v. *Rathbun,* 5 Sawy. 32, this court held that a foreign corporation engaged in loaning its own money in this state was not within the purview of the act, as limited by its title, and therefore not required to appoint such agent before doing business here. But admitting that the plaintiff was not required, while doing business in Oregon, to appoint and keep an agent here under the foreign corporation act, nevertheless it appears to be a fact that the business out of which these notes and mortgages arose was done here through an agent, resident in Oregon. The money of the plaintiff was sent here to be loaned by this agent upon applications made and accepted here. And although the notes were made payable to the plaintiff in Dundee, and with the mortgages sent there for safe keeping, they are and have been returned here for payment, and the money received on them reloaned here. It is altogether probable that the otherwise useless ceremony of making these notes payable in Dundee, and sending them there for custody until their maturity, and then returning them here for payment and collection, is a mere shift to avoid taxation thereon in Oregon. In fact, it appears that the money was loaned in Oregon and the notes made here, with the understanding between the parties that, whatever their tenor, they should be paid and payable here. If the plaintiff was actually engaged in loaning money in Dundee, and a resident of Oregon should go or send there and procure a loan from it and give his note therefor, the case would be a different one, although the note was secured by a mortgage on real property in Oregon. But it is plain to be seen that that is not this case, and that the plaintiff could never have done this volume of

business here in that way. Therefore, availing itself of the comity of the state, it comes here, in the person of its authorized agent, with its money, loans and reloans it, and is, so far, I think, a resident here for the purposes of taxation.

The maxim so much relied on by the plaintiffs—that personal property follows the person of the owner—is but a legal fiction, invented for useful purposes, and must yield whenever the purposes of convenience or justice make it necessary to ascertain the fact concerning the *situs* of such property. In cases of attachment and for purposes of taxation it is constantly disregarded, as the following cases will show: *Catlin* v. *Hull*, 21 Vt. 158; *People* v. *Com'rs of Taxes*, 23 N. Y. 225; *People* v. *Home Ins. Co.* 29 Cal. 533; *Green* v. *Van Buskirk*, 7 Wall. 150. And the case of *State Tax on Foreign-held Bonds*, 15 Wall. 300, cited and also much relied on by counsel for the plaintiff, only *decides* that a state law which comes between the foreign lender and the local borrower, and compels the latter to pay a portion of the interest due the former on his debt, as taxes to the state, is void because it impairs the obligation of the contract between the parties. And this same ruling could as well have been made on this ground if the parties had both been citizens of the state seeking to impose the tax. The case was before the court on a writ of error to the judgment of the supreme court of the state of Pennsylvania, and this was the only federal question in the case, and therefore the only one determined by it. But on the question of uniformity I confess I am unable to find any ground on which this act can be harmonized with the constitution of the state and upheld as a valid law. It is expressly confined to mortgages on land in only one county, and thereby admits what was conceded on the argument, and what the court may judicially know, that there are mortgages in this state on land in more than one county. Section 1 of article 9 of the constitution of the state, already referred to, not only requires the legislative assembly to "provide by law for *uniform* and *equal* rate of assessment and taxation," but also to "prescribe such regulations"—make such laws—"as shall secure a just valuation for taxation of *all property, both real and personal,* excepting such only for municipal, educational, etc., purposes as may be specially excepted by law." And section 32 of article 1 declares that all taxation shall be *equal* and *uniform.*"

The rule on this subject prescribed by the constitution is mandatory, and the legislature in exercising the power of taxation must conform its action thereto. But the constitution must have a reasonable and practical construction in this respect. It does not require that a law on this subject shall have mathematical precision or secure in practice absolute equality and uniformity. But it must at least appear to have been enacted with a view to uniformity, and must contain provisions reasonably calculated to secure that end in practice. But when an act not only fails to secure uniform taxation,

but upon its face appears to have been passed with a contrary intent, there can be no question of its invalidity. For instance, no one would claim that an act taxing mortgages in all the counties of the state, excepting Yamhill, or one taxing mortgages in all the counties of the state except those in the Wallamet valley, was intended or calculated to produce "uniform" taxation, or to secure "a just valuation for taxation" of "all property" not exempt therefrom by the constitution.

Now, there is no difference in principle between such an act and the one under consideration, and very little in the circumstances. The latter taxes mortgages on land in no more than one county and exempts those on land in more than one county. The mortgage taxed and the mortgage not taxed, and the property affected by them, are in all essentials the same. The only difference between them is the purely adventitious and immaterial one, that in the one case the land is all in one county, and in the other is in two or more, as in the case of the railway mortgages. Without admitting that there can be any classification of mortgages for taxation, under the constitution of the state, so as to produce a difference in the burden imposed on them or the cost or convenience of discharging it, there is no ground to say that this discrimination between one and two county mortgages is the result of a *bona fide* or other attempt to so classify mortgages for the purpose of taxation. Classification for the purpose of state taxation cannot be arbitrarily made, as by mere reference to the county in which the property is situated. For such purpose a mortgage upon an acre of land in Polk county is not distinguishable from one on an acre of land in Benton county; and a law providing for the assessment and taxation of one and not the other is wanting in the uniformity required by the constitution, and therefore void. This conclusion cannot be made plainer by argument. If the injunctions of the constitution in this respect mean anything, they certainly prohibit this kind of unequal and discriminating legislation on the subject of taxation.

This being a suit between a foreign corporation and citizens of this state, the court has jurisdiction of the controversy on account of the citizenship of the parties, whether a federal question is involved in the controversy or not. The defendants are intending and attempting to sell and dispose of the notes and mortgages of the plaintiff respectively assessed by them for the non-payment of an illegal tax; and this being repeated from year to year until the maturity and payment of the notes, the plaintiff may be compelled to maintain a corresponding number of actions at law to recover the amounts so collected, to prevent and avoid which an injunction will be allowed. Pom. Eq. Jur. §§ 243–275. But the act under which the defendants are proceeding to dispose of the plaintiff's property for taxes, being void, such disposition constitutes a violation of section 1 of the fourteenth amendment to the constitution of the United States, which for-

bids a state "to deprive any person of life, liberty, or property without due process of law," and therefore this court has jurisdiction of the case, as one arising under said constitution, without reference to the citizenship of the parties thereto.    If the defendants, acting for and in the name of the state, are allowed to take the plaintiff's property for taxes assessed under a void law, the state would thereby deprive the plaintiff of such property "without due process of law, contrary to the constitution of the United States.    *Railroad Tax Case,* 8 Sawy. 251, 287; [S. C. 13 FED. REP. 722.]

The constitution of the state (article 4, § 23, sub. 10) also prohibits the passage of "special or local law    *    *    *    for the assessment and collection of taxes for state, county, township or road purposes." In *Manning* v. *Klippel,* 9 Or. 367, it was held that an act providing for the compensation of the sheriffs and clerks of 14 out of the 23 counties of the state was a "local" law for the assessment and collection of taxes for county purposes, and therefore within this prohibition and void.    The terms "special" and "local" are not always convertible, though the former may include the latter.    A special act is one that comes short of being general.    The latter comprehends the *genus* while the former is confined to the species.    In *Holland's Case,* 4 Coke, 76a, cited in Smith, Comm. § 798, it is said, by way of illustration: "Spirituality is *genus;* bishopric, deanery, etc., are *species;*" and the author adds: "Hence, acts which concern the whole spirituality in general are general acts.    *    *    *    A statute concerning leases made by bishops is a special act, because it concerns the bishops only, who are but a species of the spirituality.    *    *    *"

An act providing for the assessment of mortgages generally is, so far, a general act.    It comprehends the *genus.*    But an act providing for the assessment of all mortgages for sums exceeding $500, or not payable within one year from the date of their execution, is special. It comprehends only a species of mortgages.    So an act providing for the assessment of mortgages on wood lands, plow lands, or river lands is special; and, in my judgment, an act that taxes mortgages on land in no more than one county, to the exclusion of those on land in more than one, is in the same category.    It does not comprehend the *genus,* mortgages, but only the species, one-county mortgages.    Without imputing to the legislature that passed this act any other purpose in making this discrimination between one and two county mortgages, than a desire to avoid the supposed inconvenience of applying it to the latter, it is well to remember that special legislation in the imposition of taxes is sure, if unrestrained, to run into partiality, oppression, and injustice.    To prevent this evil this inhibition against special legislation was placed in the constitution.    It is not material to the decision of this application nor the case, except as to the loan in Marion county, to ascertain how far, if at all, this act is prospectively valid.    It forbids any more two-county mortgages being made, but it cannot, nor does not, attempt to annihilate

or strike out of existence those made before its passage.    Admitting
that the legislature cannot discriminate between mortgages on the
ground of the locality of the property affected by them, it follows that
so long as there are any two-county mortgages in existence in the
state, an act taxing only one-county mortgages is open to the objec-
tion of want of uniformity.    In reaching this conclusion concerning
the validity of this act, I have not been unmindful of the responsi-
bility of declaring an act of the legislature void.    But, as was said by
this court under similar circumstances, (*Oregon & Wash. T. & I. Co.*
v. *Rathbun*, 5 Sawy. 38,) "In a plain case like this, it is as much the
duty of the court to declare the act of the legislature invalid as to re-
form or set aside a contract for mistake or fraud.    In so doing, it
but upholds and obeys the supreme law,—the constitution,—to which
both courts and legislatures are bound to conform their conduct."

Let the injunction issue as prayed for; the plaintiff first giving a
bond with sufficient surety, to be approved by the master of this court,
in a sum equal to the tax in question and 20 per centum thereon,
conditioned that the plaintiff will pay all damages which the defend-
ants or either of them may sustain by reason of such injunction, if
the same shall be held wrongful, to be ascertained by a reference or
otherwise, as this court may direct.

---

Due process of law, *County of Santa Clara* v. *Southern Pac. R. Co.* 18
FED. REP. 385, and note, 449; *Railroad Tax Cases*, 13 FED. REP. 722, and
note, 783; obligation of contract, *Sawyer* v. *Parish of Concordia*, 12 FED.
REP. 754, and note, 761; state power of taxation and equality and uniform-
ity, *Railroad Tax Cases*, 13 FED. REP. 722, and note, 785; *In re Watson*, 15
FED. REP. 511, and note, 514; *State of Indiana* v. *Pullman Palace Car Co.*
16 FED. REP. 193, and note, 201; *County of Santa Clara* v. *Southern Pac. R.
Co.* 18 FED. REP. 385, and note, 445; restraining collection of tax, *Second
Nat. Bank* v. *Caldwell*, 13 FED. REP. 429, and note, 434; taxation of national
bank shares, *Second Nat. Bank* v. *Caldwell*, 13 FED. REP. 429, and note,
433; *Exchange Nat. Bank* v. *Miller, infra.* and note.—[ED.