## BUCK, TRUSTEE, v. BEACH, TREASURER.

[No. 20,105. Filed October 13, 1904. Rehearing denied December 29, 1904.]

TAXATION.— *Notes and Mortgages.— Nonresidents.— Agency.—* During many years a resident of New York maintained an agency in Ohio for the loaning of money on Ohio real estate, giving his agent authority to collect principal and interest and reinvest the proceeds. The notes were made payable in said state. From 1884 to 1893 the owner of said notes and mortgages, in order to avoid taxation in Ohio, maintained in Indiana an agency for the keeping of said notes. It was the duty of the Indiana agent at all times to keep said notes and mortgages in this State, except that he was required to return them for necessary interest indorsements and upon their maturity, and except that he was required to send them to Ohio for a few days in each year, in order to avoid assessment days in Indiana. *Held,* that said credits were properly subjected to taxation under §§6271, 6273 R. S. 1881, and §§8410, 8421 Burns 1901.

From Tippecanoe Circuit Court; *Joseph M. Rabb,* Judge.

Action by William E. Beach as treasurer of Tippecanoe county against James Buck as trustee under the will of Job M. Nash, deceased, for an injunction. From a decree for plaintff, defendant appeals. *Affirmed.* (Appealed to United States Supreme Court.)

*Byron W. Langdon, Addison C. Harris* and *Frank C. Cutter,* for appellant.

*J. Frank Hanly* and *Will R. Wood,* for appellee.

GILLETT, J.—James Buck and William A. Goodman, as trustees under the will of Job M. Nash, deceased, commenced an action in the court below against appellee's predecessor in office to cancel an assessment for taxes made against their decedent's estate, and to restrain that officer

from enforcing said assessment against them and against the property held by them. A demurrer for want of facts was sustained to the complaint, and final judgment rendered against the plaintiffs in said action. They prosecuted an appeal to this court, where the judgment was affirmed. *Buck* v. *Miller* (1897), 147 Ind. 586, 37 L. R. A. 384, 62 Am. St. 436. Appellee afterwards commenced this action to enjoin appellant from removing certain of said trust property from the county of Tippecanoe until the taxes which had been assessed against the estate of said Nash upon the duplicate of said county had been paid, and to procure an order against him to discover and turn over, for the purpose of sale, so much of said property as it was necessary to sell to pay said taxes. There was a trial by the court, and, before the finding, the parties entered into the following stipulation, which was made a matter of record: "It is agreed in open court by and between the parties to this cause that the court, in the judgment and decree to be rendered herein, may find, fix, and adjudge what, if any, of the property, on which the tax in controversy herein was levied, was subject to taxation for each of the years in controversy, and what, if any, portion of the said assessment is a valid assessment; also the amount, if any, of said taxes due the plaintiff herein; also what, if any, portion of said assessment is invalid and void, and that the court in such decree may adjudge the payment of any portion of said assessment so found and adjudged to be due, and may cancel and enjoin the collection of any portion of said assessment so found and adjudged to be invalid, and said action of the court shall be taken and held to be within the issues in said cause, and this agreement shall not be controlling on the parties for any other purpose." There was a finding in favor of appellee. Although special in form, yet, for want of a prior request, the finding must be treated as general in effect. Over appellant's motion for a new trial, there was a decree in accordance with the finding, and the

record presents the question whether the finding was contrary to law.

The underlying controversy in this case relates to the taxation of certain notes secured by mortgage, styled in the record "the Ohio notes." In 1895 the auditor of Tippecanoe county, after giving notice to the executors of said estate and to appellant, entered upon the duplicate of said county, as omitted property, assessments against said estate, based on said notes, for the years and in the amounts following: 1884, $32,329.08; 1885, $98,131; 1886, $129,885; 1887, $198,612; 1888, $241,457; 1889, $221,-599; 1890, $282,524; 1891, $311,944; 1892, $369,636; 1893, $309,858. The auditor also extended taxes upon said assessments aggregating, aside from penalties, $36,-357.71. During the years above mentioned, and for a considerable time prior thereto, the decedent was in life, and was domiciled in, and a resident of, the state of New York. During the period covered by said assessment he had a sum approximating $750,000 invested in Ohio and Indiana, much of which was loaned upon notes secured by mortgage upon real estate. For the purpose of collecting the principal and interest on his outstanding investments, and to re-invest the moneys so received, he had an agent in Cincinnati and another in LaFayette. The Cincinnati agent commenced loaning decedent's money about 1860, and upon the removal of decedent to New York, about 1870, until his death, in 1893, said agent made investments on decedent's behalf in Ohio, collected principal and interest upon his mortgage loans, and had general charge of his financial interests in that state. The notes on which said assessment was based were made payable to decedent in Ohio, in from three to five years after their execution, and were secured by mortgage on real estate situate in said state. James Buck was the agent of decedent at LaFayette during the years from 1884 to 1893. Aside from his duties in respect to Indiana business, Buck kept the Ohio notes involved in

said assessment, together with the mortgages securing said notes, in his possession at LaFayette, Indiana, from the time the mortgages were recorded until the notes were due, except that the notes were sent to the Ohio agency to have interest payments indorsed upon them, and except that the notes and mortgages were sent to Ohio just before the 1st day of April in each year, the Ohio agent returning them a few days afterwards. It was the business of Buck, aside from keeping said notes and mortgages safe, to keep memoranda of the loans represented by them, and of the transactions concerning them, in a register, and to forward said instruments as above indicated.

It is the theory of appellant that the Cincinnati agent had the legal control of the Ohio notes and mortgages at all times, and that they were sent to LaFayette merely for safe-keeping and for clerical convenience. If we were required to accept the conclusions of the two agents, as set out in the transcript of the evidence, as to who had the control of said paper, appellant's theory would be maintained by the record; but the court below was authorized to make the opposite deduction from the uniform course of the business in respect to the keeping of said notes and mortgages, and from the evidence that decedent gave the direction which established the practice that was pursued in that particular. More than that, the evidence clearly warranted the conclusion that Buck was vested with a control of said notes and securities for the purpose of enabling decedent to escape taxation in Ohio. We must therefore conclude, in support of the general finding, that the court below found that, in conducting the business of the Ohio agency, the decedent separated from said business the possession of said notes and mortgages, and vested the right to such possession in said Buck. There was no return for taxation of said notes, or of the investments represented by them, either in Ohio or in New York during the lifetime of the decedent. There was much evidence introduced by appellee as to the nature

and extent of the business conducted by Buck at the La-Fayette office, and as to the powers possessed by him, but in the view we take of the case it is not necessary to go into these matters. We may, however, state, as a circumstance not wholly immaterial, that the office wherein said notes and mortgages were kept belonged to the decedent.

It is contended by appellant's counsel that the Ohio notes were not taxable in Indiana, because the owner of them was a nonresident of this State, and the notes themselves had at no time been used or invested in any Indiana business, and had not arisen out of any business or investment in this State.

It was said by Chief Justice Marshall, in pronouncing the opinion of the court in *McCulloch* v. *State of Maryland* (1819), 4 Wheat. 316, 429, 4 L. Ed. 579: "All subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation. This proposition may also be pronounced self-evident. The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission."

In *State Tax on Foreign-Held Bonds* (1872), 15 Wall. 300, 21 L. Ed. 179, it was, in effect, said that the subjects of taxation within the jurisdiction of a state are necessarily limited to persons, property and business. Without pausing to determine how far *Buck* v. *Miller* (1897), 147 Ind. 586, 37 L. R. A. 384, 62 Am. St. 436, declares the law of the case upon this appeal with reference to the question as to whether said notes were taxable in this State, we may say that we agree with counsel for appellant that the mere fact that a business was carried on in Indiana which was collateral to the business of Buck in connection with the notes in question was not enough to give said notes a business situs here.

In the orderly disposal of this case it is necessary to consider, first, as to the existence of the power to tax paper evi-

dences of credit, and, next, if that question is solved in the affirmative, whether the power has been exercised.

In *Pullman's Palace Car Co.* v. *Pennsylvania* (1891), 141 U. S. 18, 22, 11 Sup. Ct. 876, 35 L. Ed. 613, the court said: "No general principles of law are better settled or more fundamental, than that the legislative power of every state extends to all property within its borders, and that only so far as the comity of that state allows can such property be affected by the law of any other state. The old rule expressed in the maxim *mobilia sequuntur personam,* by which personal property was regarded as subject to the law of the owner's domicile, grew up in the middle ages, when movable property consisted chiefly of gold and jewels, which could be easily carried by the owner from place to place, or secreted in spots known only to himself. In modern times, since the great increase in amount and variety of personal property, not immediately connected with the person of the owner, that rule has yielded more and more to the *lex situs,* the law of the place where the property is kept and used."

In *New Orleans* v. *Stempel* (1899), 175 U. S. 309, 320, 20 Sup. Ct. 110, 44 L. Ed. 174, it was said of the observation of the court in the case of *State Tax on Foreign-Held Bonds, supra,* that personal property consisting of bonds and mortgages generally has no situs independent of the owner: "This last sentence, properly construed, is not to be taken as a denial of the power of the legislature to establish an independent situs for bonds and mortgages when those properties are not in the possession of the owner, but simply that the fiction of law, so often referred to, declares their situs to be that of the domicile of the owner, a declaration which the legislature has no power to disturb when in fact they are in his possession." The case from which we have just quoted is an instructive one on the question as to the power of the legislature to localize notes and mortgages for the purposes of taxation. In that case the plaintiff, as

guardian of certain minors, residents of New York, appointed by a court in that state, having been put in possession of certain notes belonging to her wards, secured by mortgage on real estate in Louisiana, left the notes and mortgages in the possession of an agent in that state, to collect the interest and principal, and deposit the money in a bank in New Orleans to the credit of the plaintiff. It will be observed that the case did not involve the element of reinvestment. It was held that the notes were subject to taxation in the hands of the agent. In concluding the opinion the court said: "It is well settled that bank bills and municipal bonds are in such a concrete, tangible form that they are subject to taxation where found, irrespective of the domicile of the owner, are subject to levy and sale on execution, and to seizure and delivery under replevin; and yet they are but promises to pay—evidences of existing indebtedness. Notes and mortgages are of the same nature; and while they may not have become so generally recognized as tangible personal property, yet they have such a concrete form that we see no reason why a state may not declare that if found within its limits they shall be subject to taxation."

In *People, ex rel.,* v. *Board, etc.* (1872), 48 N. Y. 390, the question was as to whether a real estate contract, relating to lands in New York, belonging to a nonresident vendor, and held in the hands of an agent in said state, was taxable therein. In the course of the court's opinion it was said: "Notes, bonds and other contracts for the payment of money have always been regarded and treated in the law as personal property. They represent the debts secured by them. They are the subject of larceny, and a transfer of them transfers the debt. If this kind of property does not exist where the obligation is held, where does it exist? It certainly does not exist where the debtor may be, and follow his person. And while, for some purposes in the law, by legal fiction, it follows the person of the creditor and exists

where he may be, yet it has been settled that for the purpose of taxation, this legal fiction does not, to the full extent, apply, and that such property belonging to a nonresident creditor may be taxed in the place where the obligations are held by his agent."

Attention may be called to the case of *People, ex rel.,* v. *Smith* (1882), 88 N. Y., 576, in which it was held that property belonging to a person domiciled in the state of New York, consisting of notes and mortgages, which had obtained a business situs in another state, was not to be treated as taxable under the New York statute. That case possesses two special elements of interest: (1) That it is a case where a court of the state in which the owner of the property was domiciled gave recognition to the fact that notes and mortgages may obtain a situs for taxation elsewhere; and (2) that the decision at least suggests that the decedent Nash was probably not liable to pay taxes on said Ohio notes in New York, the state of his domicile.

In the case of *In re Romaine's Estate* (1891), 127 N. Y. 80, 27 N. E. 759, 12 L. R. A. 401, the question arose as to the liability of the estate of a person who died while domiciled in the state of Virginia to pay a tax, under the collateral inheritance tax law of the state of New York, on the value of certain paper evidences of investments, kept in a safety deposit vault in New York City, and also on his deposits in savings banks in that city. The statute in terms applied to nonresidents as well as to residents; but, aside from the matter of power, there was a question whether the property was within the state, as a matter of law, in view of its character and the domicile of its owner. "The fiction of law," said the court, in considering the statute, "that personal estate has no situs away from the person or residence of its owner is done away with to a limited extent, and for a specified purpose, and the truth is substituted in its stead as a rule of action. That the legislature had the power to do this can hardly be questioned. *Matter of Mc-*

*Pherson* [1887], 104 N. Y. 306, [10 N. E. 685, 58 Am. Rep. 502]. As said by Judge Story, when writing upon this subject: 'A nation within whose territory any personal property is actually situated has as entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there.' Story, Confl. of Laws, §550. In *People, ex rel.,* v. *Commissioners* [1861], 23 N. Y. 224, 228, Judge Comstock quotes with approval the foregoing extract, and adds: 'I can think of no more just and appropriate exercise of the sovereignty of a state or nation over property situated within it and protected by its laws, than to compel it to contribute toward the maintenance of government and law. Accordingly there seems to be no place for the fiction of which we are speaking *(mobilia sequuntur personam)* in a well-adjusted system of taxation.' * * * The appellant further contends that the property in question was not 'within the state,' according to the true meaning of the statute, and the contention is supported by the argument that it would be unreasonable to tax money found upon the person of a nonresident who died while traveling in this state. We should hesitate before applying the statute to any property casually brought into the state for a temporary purpose, as by a visitor or traveler, but the record before us does not present such a case. It might well be held that such property although literally 'within this state,' was not here in the sense meant by the statute, on account of the transitory and accidental character of its presence and the immediate custody of the owner. *Herron* v. *Keeran* [1877], 59 Ind. 472, 476. Where, however, the money of a nonresident is invested in this state, as it was by Mr. Romaine in the bond and mortgage in question, and in the deposits made by him in the savings banks, or where the property of a nonresident is habitually kept, even for safety, in this state, we think that the statute applies both in the letter and spirit. Such property is within this state

in every reasonable sense, receives the protection of its laws, and has every advantage from government, for the support of which taxes are laid, that it would have if it belonged to a resident." See, also, *In re Whiting's Estate* (1896), 150 N. Y. 27, 44 N. E. 715, 34 L. R. A. 232, 55 Am. St. 640; *In re Houdayer's Estate* (1896), 150 N. Y. 37, 44 N. E. 718, 34 L. R. A. 235, 55 Am. St. 642.

A case involving the power to tax the notes of a nonresident company, although it only made use of its credit in purchasing such notes, and had no local capital, is *Comptoir* v. *Board* (1900), 52 La. Ann. 1319, 27 South. 801. In that case a French company was engaged at New Orleans in the business of loaning money on bills of lading covering cotton and grain shipped to Europe. It raised the money to make such advances by selling its bills of exchange upon London, Paris, Berlin and New York. In deciding the case the court said: "A non-negotiable note is certainly sufficiently concrete in form to be made an object of taxation. The fact that it may be less valuable in fact than it appears on its face, may affect the estimate to be placed upon it for assessment purposes, but that question is something other than the question of its being a proper object of taxation. If a person domiciled abroad were to die leaving non-negotiable notes in this state in the hands of an agent, the presence of these notes in Louisiana would authorize the opening of the succession in Louisiana for the protection of Louisiana creditors. We think the state has as much legal right to subject them being here to the payment of the contribution which it justly claims from all parties receiving the protection and benefit of its law, who operate their property here for their individual gain and benefit, as any creditor would have."

A late text-writer on the law of taxation says: "Where personal property is located within the state, whatever its form, whether evidences of debt or otherwise, it may be subjected to the state's taxing power, irrespective of the

residence of the owner.   Thus the state may establish an independent situs for taxation of bonds, mortgages and other securities of nonresident owners, located in its jurisdiction."  Judson, Taxation, §394.  And see §397 of same work.  In the light of the above authorities there certainly can be no question as to the power of the legislature to treat the promissory notes of nonresidents which are permanently kept in the hands of an agent within the State as personal property for the purposes of taxation.

The only open question in this connection is as to whether the power has been exercised.  Preliminary to a consideration of the taxation acts of 1881 and 1891 (Acts 1881, p. 611, §6269 et seq. R. S. 1881, Acts 1891, p. 199, §8408 et seq. Burns 1901), respecting the question suggested, it will be profitable to consider such of the decisions of this court as are relevant to the question last suggested, and also to consider which state, according to general principles of law, may be said to have been the proper or more appropriate jurisdiction to tax the property mentioned.  We pass over without citation a number of early cases in Indiana wherein it was held that, in the absence of any direction to the contrary, the domicile of the owner of intangible personal property is the controlling factor as between different taxing corporations within the State.  We do not regard such authorities as at all in point as applied to cases like the one in hand.

In Herron v. Keeran (1877), 59 Ind. 472, 26 Am. Rep. 87, it was held that promissory notes and accounts placed in the hands of an attorney in Indiana for collection, and municipal bonds left temporarily with a bank in this State for safe-keeping, belonging to a nonresident, were not liable to taxation here.  This court there said that the choses in action involved were property within the State, and as such were within the letter of the taxation act; but as a matter of interpretation it should be held that the property was not within the State according to the sense in which the

legislature had used those words. The court in that case distinguished between the case before it and the class of cases recognizing the possibility of notes obtaining a business situs where they are in the hands of an agent for collection, with a purpose to have him reloan the money, the business being permanent in his hands.

*Foresman* v. *Byrns* (1879), 68 Ind. 247, is not remotely in point upon the question here involved, so far as the matter before the court was concerned; but that case is relied on by counsel for appellant, since language was used in the opinion from which it is to be inferred that credits due to a nonresident are only to be taxed where a business situs has been established as the same was defined in the case of *Herron* v. *Keeran, supra.* There was a mere statement of the proposition, and, as the question of business situs was not involved, it can not be presumed to have received the careful attention of the court. This mere inconsiderate *obiter* can not be held to have established a rule, of construction that should be influential in the construction of the taxation acts which were subsequently passed. See *National Supply Co.* v. *Stranahan* (1904), 161 Ind. 602; *Sulzer-Vogt Mach. Co.* v. *Rushville Water Co.* (1903), 160 Ind. 202.

*Schmidt* v. *Failey* (1897), 148 Ind. 150, 37 L. R. A. 442, is a case which involved the liability of a receiver of a corporation to assessment for the purposes of taxation on moneys in bank in this State, it appearing that a considerable part of the fund deposited, belonging to creditors over the country, had been brought into the State by reason of the fact that courts in other states had appointed receivers over the same corporation, and had caused the funds sequestered by such orders to be turned over to the receiver in this State, for the purpose of having one administration. In deciding that the deposit was subject to taxation, this court indicated that since the funds were protected by this State, and one of its courts was administering the trust, it in-

clined to a construction of the act of 1891 which would render the property liable to contribute to the maintenance of government in this State. In *Gallup* v. *Schmidt* (1900), 154 Ind. 196, it was said: "The right to tax property is a sovereign right reserved to the jurisdiction charged with the duty of its protection; and the authority of a taxing district to require all classes of property sheltered by it to pay their ratable proportion of the expenses of maintaining the government is unaffected by the residence of the owner."

We come now to the case of *Buck* v. *Miller* (1897), 147 Ind. 586, 37 L. R. A. 384, 62 Am. St. 436, which we mentioned in an earlier portion of this opinion. As indicated, the questions in that case were presented on demurrer to the complaint. There was so much of what was material left indefinite in that pleading that we hesitate to hold that the opinion is the law of the case in respect to the question as to whether said notes were taxable in this State. That opinion, however, is very much in point. Thus it was there said: "For purposes of taxation, the term personal property includes bonds, notes, choses in action and other evidences of credits. * * * The test as to where the right to tax property exists is its place of location and use; the place where, if a security or obligation, it is a credit, not where it is a debit. It is quite immaterial whether the notes or other obligations were executed or were due by residents or nonresidents of the State. If they were owned, held or used in Indiana, they were taxable here; and this, too, whether the business here in which they were used was conducted by Mr. Nash in person, or by some one else for him. * * * The property is taxable where it is owned, held and used in business, and where it is protected by the laws of the community in which it is so held and used; and the circumstance that the owner, whether for honest or other motives, claims a residence elsewhere, is not controlling. It is, of course, quite different, as already many times said, where the property is temporarily in the State; as, for in-

stance, where securities are sent into the State for collection, inspection, safe-keeping, or the like."

It does not militate against the power of the state to tax personal property which has a definite and permanent situs therein that another state, by reason of its jurisdiction over the owner or otherwise, is also exercising a like power. *Coe* v. *Errol* (1886), 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715; *Boyer* v. *Jones* (1860), 14 Ind. 354; Judson, Taxation, §426. And see *Davidson* v. *New Orleans* (1877), 96 U. S. 97, 106, 24 L. Ed. 616. As a matter of justice, however, the courts incline to a presumption that the taxing acts they are called on to construe were not intended to reach property which has its proper situs elsewhere, provided that the language of the statute does not lead to the opposite conclusion. But as applied to this State it may be said that where it appears that the proper situs of property is here, the effect of our constitutional provision relative to taxation (§1, Art. 10) is to create a presumption of a legislative purpose to tax. As an aid therefore to the construction of the acts of 1881 and 1891, we look to the question as to whether the appropriate state for the taxing of said notes was New York, Ohio or Indiana.

As to the first-named state, it would appear that, if the notes and the agency had been united in another state, the doctrine laid down by the New York court of appeals would have relieved the owner of liability to pay a tax on the notes in New York, provided, of course, that the statute remained as it was. In view of the abiding character of the Ohio agency, and of its nature and extent, and of the fact that the notes were kept in this State in the hands of an agent, as a part of said business, and in the office of the decedent, it can not be held that the owner did not separate the notes from his domicile. So far as concerns protection of the property, the most potent element in natural justice on which taxation can be based, it appears that New York can not assert that reason for exacting a tax. Indeed, it could

not reach the property, but only its owner—a power that ought to be the first to yield.

As to the state of Ohio, it is first to be considered that the mere fact that it was the state where the debts existed did not authorize it to tax the investments. *State Tax on Foreign-Held Bonds* (1872), 15 Wall. 300, 21 L. Ed. 179; *Senour* v. *Ruth* (1894), 140 Ind. 318. In the federal case above cited it was said: "Corporations may be taxed, like natural persons, upon their property and business. But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditor. With them they are property and in their hands they may be taxed. To call debts the property of debtors is simply to misuse terms." Since the above case was decided, the same court held in *Savings & Loan Soc.* v. *Multnomah County* (1898), 169 U. S. 421, 18 Sup. Ct. 392, 42 L. Ed. 803, that for the purposes of taxation it is competent for the state to tax the interest of a mortgagee of real property at the place where the land is situated, relieving the owner of the land *pro tanto;* but that case proceeded on the theory that, as a mortgage is a defeasible conveyance of the fee, it is therefore competent to tax such interest. Doubtless it would have been within the authority of the state of Ohio to have established an excise tax upon the permanent business of loaning money in the state. It may be possible that, as to moneys which had been made permanently a part of the capital of the state it would have been competent to have enacted a law requiring agents in such circumstances to return such capital, on behalf of the owner, as moneys loaned, although we have not found any case which goes that far. Whether any such exceptional enactment exists in the state of Ohio we are not informed, and it is really immaterial as to what the fact is in such particular, for it will be perceived that neither of such forms of taxation would tax either the note or the

credit. In the enforcement of its revenue system this State can not defer to any possible law which might be upon the statute books of another state indirectly subjecting the same property to taxation. Our chief concern in entering on the inquiry as to whether the decedent was subject to taxation on his property in Ohio was to guard against a holding that the notes were taxable here (assuming that such construction were admissible), if, upon well-established principles concerning notes obtaining a business situs, it was evident that holding such property liable here would result in double taxation. All of the cases involving business situs that we have examined are cases where the notes were in the hands of the agent. Indeed, under any ordinary statute, merely authorizing the taxation of property in the possession of an agent, we do not perceive how he could be assessed except upon the notes. If the latter had a situs elsewhere, it would result that in such circumstances the investment would escape taxation. See *People* v. *Davis* (1884), 112 Ill. 272. We shall therefore look to the question as to the situs of the notes.

The evidence in this case warranted the conclusion that the agent in Ohio had no general right of possession which would have enabled him to recall the notes at any time; that his right of possession was limited to the times when the principal or interest was due, and to assessment days in Indiana. It is to be recollected that whatever measure of possessory right the Indiana agent had over the notes was in necessary diminution of the possession which might be lawfully had of them by the agent in Ohio. It appears that the possession of the notes in Indiana was the substantial one, while that in Ohio was never more than ephemeral, and in some instances merely fugitive. Such possession as the Ohio agent had, assuming that he had no general right of control, was not sufficient to establish the situs of the notes there, as between that state and the one where they may be practically said to have been kept, and where an

essential part of the business of the agency, as it was actually constituted, was carried on.

If it satisfactorily appears that neither New York nor Ohio was the proper place for the assessment of said notes, then it must needs be that the appropriate situs for their taxation was in this State. Indiana has just grounds on which to claim the situs of said notes. It was the only state in which they were generally kept; they were kept in the hands of an agent here, in the office of decedent, in connection with a business that, however limited as applied to this State, was of a permanent character, and a component part of an entire business sufficiently broad to give such notes a situs other than the domicile of the owner. The additional elements of a power over the paper to surrender it upon payment and to reinvest the proceeds serve to mark more plainly a business situs; but in this case, where a single business had, for the purpose of transacting it, been split up between two states, we think that the state which not only furnished protection, but which had within it, practically at all times, the concrete evidences of the indebtedness that alone, so far as the credit was concerned, was subject to taxation, may be treated as the proper situs for the assessment of such paper. This is not a case of notes sent into the state by their owner for safe-keeping and clerical convenience merely. The business done by Buck concerning said notes would have clearly been a part of the Ohio business, had it been done in Ohio, but as Buck's duties relative to said notes were transacted in Indiana, as they were required to be, such duties, while attached to the same business, were really a part of an interstate business. That business, as before stated, was of such a character as to localize said notes for the purposes of taxation, and the court is therefore called upon to determine the situs of the notes pertaining to the business, as between the states in which the business was transacted.

We regard the proper situs of the paper as the place

where it was located in fact. The theory of appellant's counsel- that notes of a nonresident are only taxable in the event that they represent business done in the State is fallacious. The assessment is in this instance based on the paper representatives of credits, on the theory that the concrete evidence of a credit, which may be seen, handled and replevied, which is protected by the law, and which so far represents the demand that a mere delivery of it may carry an equitable right to receive the benefit of the promise, may appropriately be subjected to assessment in the state where it is kept, provided that the circumstances of the keeping are such as to separate it from the domicile of its owner. If this be the correct theory, the state in which the note is not kept, and not protected, where it can not be seen, handled or replevied, or subjected to manual delivery, is not the state which may most appropriately tax the note.

There can be nothing in the theory that the state where the note is payable continues to protect it, though absent, by holding out a remedy for its ultimate enforcement, for constitutional provision has placed it beyond the power of the state to impair the contract. Neither can it be held that the state where the note is given may tax it on the theory that it is the place of its business nativity, for this would enable the state to tax notes executed in the state, not connected with any business agency and in the hands of nonresident principals—a proposition which all of the authorities deny.

Furthermore, as it was decedent's purpose to avoid localizing said notes in Ohio by keeping them in this State, the intent must be imputed to him to establish a situs for that portion of his wealth here; and in a case where the tangible evidences of a man's investments are kept here permanently, in the hands of an agent, to escape taxation elsewhere, we perceive no reason why it would be unjust to him to hold that his paper was within the State.

In view of all the circumstances surrounding the keeping

of said notes in Indiana, and of the purpose in so doing, it is not only our opinion that the situs of said notes was within the governmental subdivision on behalf of which appellee acted, but also that, so far from straining against a construction of the enactments from which the authority to assess must be derived, if it exists, we ought rather to give weight to the presumption that the General Assembly has done its plain duty in the premises, by providing for the assessment of the property.

Section 6271 R. S. 1881, provided: "All real property within this State, all personal property owned by persons residing in this State (whether it is in or out of this State), and all personal property within this State owned by persons not residing within this State, subject to the exceptions hereinafter stated, shall be subject to taxation." Section 6273 R. S. 1881, provided that "the terms 'personal estate' and 'personal property,' as used in this act, shall be construed to include * * * all rights, credits, and choses in action." Provision was made for agents listing property. §§6297, 6330 R. S. 1881. The schedule of said act was sufficiently broad to cover property which could not be listed as money loaned. See items 81 and 82, §6336 R. S. 1881.

Turning now to the act of 1891, we find that §8410 Burns 1901 (Acts 1891, p. 199, §3) provides that "all property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation." Provision is made in said act for agents listing property. §§8429, 8458 Burns 1901 (Acts 1891, p. 199, §§19, 48). It is also provided that "personal property of nonresidents of the State shall be assessed to the owner or to the person having control thereof in the township, town or city where the same may be, except that where such property is in transit to some place within the State, it shall be assessed in such place." §8421 Burns 1901 (Acts 1891, p. 199, §11). All notes are required to be valued in the schedule (§8460 Burns 1901,

Acts 1891, p. 199, §50), and that instrument must be attested by an oath that it "contains a true, full, and complete list of all property, held or belonging to" the person making the same. §8463 Burns 1901 (Acts 1891, p. 199, §53). Section 8676 Burns 1901 (Acts 1891, p. 199, §258) provides as follows: "The state board of tax commissioners is hereby authorized to prepare for the use of assessors a more complete and perfect form of 'schedule of property' than that set out in section fifty-three of this act, with a view of securing a full assessment of all of the property of the State." Counsel for appellant contend that §8410, supra, is limited in its operation by the section which follows it. Segregating these two sections from the remainder of the act, the contention mentioned might seem plausible, but the whole act must be considered, and, especially in view of the section last quoted, we are constrained to the conclusion that it was not the purpose in the enactment of §8411 Burns 1894, Acts 1891, p. 199, §4, to give a particular enumeration of all of the kinds of property which the act subjects to taxation.

Referring now to both acts, we are of opinion that each is broad enough, the situs of the notes being within the State, to warrant the holding that said notes were subject to taxation here, and reading said acts in the light of the constitutional requirement above referred to we deem it clear that the construction indicated is proper. Indeed, it is our opinion that, as to any property having a definite and established situs within the State, the onus is on the person objecting to its assessment to point out some reason compelling the conclusion that the legislature has not subjected the property to taxation.

Having held that the situs of the Ohio notes was in Indiana, rather than Ohio, it must needs follow that the mere fact that they were sent out of the State each year to avoid having them here on assessment day can make no difference. The statute can not be thus avoided. *Dundee Mort-*

*gage, etc., Co.* v. *School District* (1884), 19 Fed. 368; *Savings & Loan Soc.* v. *Multnomah County* (1898), 169 U. S. 421, 18 Sup. Ct. 392, 42 L. Ed. 803; *Connecticut Valley Lumber Co.* v. *Monroe* (1902), 71 N. H. 473, 52 Atl. 942; *Webb* v. *John Hancock, etc., Ins. Co.* (1904), 162 Ind. 616; *Voss* v. *Waterloo Water Co.* (1904), 163 Ind. 69. It is the substantial possession to which the law looks, and that possession is not impaired by a mere temporary transfer. *Powell* v. *City of Madison* (1863), 21 Ind. 335.

Appellant's counsel further contend that the act of 1891 would be invalid, as discriminating against nonresidents, if it were held that provision had been made by said act for the assessment of notes held as these notes were, since section four of said act (§8411 Burns 1894) contains an exemption in favor of residents by the provision that, for the purposes of taxation, personal property shall be held to include "all goods, chattels and effects belonging to inhabitants of this State situate without this State, except the property actually and permanently invested in business in another state shall not be included." This provision was not designed to give an advantage to residents of this State by way of avoiding taxation, but it merely represents an act of comity, by which this State yields in a measure its taxing power over the owner, to avoid double taxation, in a class of cases where in all probability the other state is taxing the business or the property invested therein. To give appellant a standing to complain, assuming that said section could in any circumstances offend against the provisions on which his counsel rely, it occurs to us that he ought to show that his decedent's property was liable to taxation elsewhere. But it is not because the owner of said notes was a nonresident that our minds incline to the conclusion that the notes were subject to assessment in Indiana, but because the notes had a situs here. How our statute, thus construed, could be held to be discriminative as

against a nonresident, we are at a loss to understand.  This State has merely created an exemption in favor of its own citizens from the burdens of taxation here on a class of property having its permanent situs elsewhere.  Just such an exemption, we are led to infer, was created in favor of decedent and those in like situation by the laws of the state of New York.  In other words, by said section this State has released its citizens from a burden at home based on the theory that they would be subjected to taxation elsewhere, and the same right which we recognize as existing in another state to tax the property of our citizens, if it is permanently located therein, is the right which this State asserts against nonresidents who establish the situs of their property here.  This is not discrimination, but perfect fairness.

Finally, counsel for appellant urge that as the property against which the assessment was sought to be levied had come to him as a legatee, in trust to carry out certain provisions of the decedent's will, there is no statutory authority for assessing him on account of property omitted by the decedent in his lifetime.  The complaint by appellant and his co-trustee to enjoin the enforcement of said assessment, which was under review in *Buck* v. *Miller* (1897), 147 Ind. 586, 37 L. R. A. 384, 62 Am. St. 436, contained full averments as to the nature of the securities held by said trustees, and as to the manner in which they obtained title thereto. There was an unequivocal holding in that case that the auditor had authority to levy an assessment on omitted property in such circumstances, and that taxes so assessed were a lien upon all of the property of the estate within the county.  We entertain no doubt, therefore, that said rulings, whether right or wrong, have become the law of the case, and they are therefore binding upon the parties during all subsequent stages of the controversy.  We find no error.

Judgment affirmed.